**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 17, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KHALED FM ALZAINATI,

      Petitioner,

v.

ERIC H. HOLDER, JR.,[*]
United States Attorney General,

      Respondent.

No. 07-9565

---

**APPEAL FROM THE BOARD OF IMMIGRATION APPEALS**
**PETITION FOR REVIEW**

---

Submitted on the briefs:[**]

Daniel F. Boyle, Denver, Colorado, for Petitioner.

Mark C. Walters, Assistant Director, Joanne E. Johnson, Attorney, Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for Alberto R. Gonzales as the respondent in this appeal.

[**]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**O'BRIEN**, Circuit Judge.

Khaled FM Alzainati petitions for review of an order of the Board of Immigration Appeals (BIA or Board) denying his motion to reopen. We dismiss the petition in part for lack of jurisdiction and deny the petition in part.

Background

Alzainati is a native and citizen of Jordan. Accompanied by his wife and two sons, he entered the United States in 1991 with a B-2 visitor visa authorizing a six-month stay. He never left. A third son, Jawad, was born later that year; he is a United States citizen.

In 2003, the Department of Homeland Security sought to remove Alzainati for overstaying his visa. *See* 8 U.S.C. § 1227(a)(1)(B). He filed an application for cancellation of removal and appeared before an immigration judge (IJ) in 2005 for a merits hearing. He conceded removability as charged but argued for cancellation pursuant to 8 U.S.C. § 1229b(b)(1), which required him to show, among other things, that his removal would cause "exceptional and extremely unusual hardship" to a qualifying relative. *Id.* § 1229b(b)(1)(D)[1] Specifically,

_____

[1]    The statute also requires an alien to establish ten years of continuous physical presence in the United States, good moral character during that time, and no conviction of enumerated offenses. *See* 8 U.S.C. § 1229b(b)(1)(A)-(C). The IJ concluded Alzainati had met the first two of these requirements but made no explicit finding as to the third. In any event, these additional requirements are

(continued...)

Alzainati contended Jawad, an excellent student, would have difficulty adapting to life in Jordan because he lacked Arabic language skills, having missed the eight or nine years of Arabic-language public education typical of students his age.  Also, as an English-speaking American citizen, he would likely encounter anti-American sentiment.  Alzainati also claimed if he was removed to Jordan, it would be difficult to find eye care for Jawad's nearsightedness and to obtain medications for Jawad's recurrent skin rashes.  Even if such care and medications were available, he said he would be unable to afford them because at his age (then fifty-two), it would be difficult to find work.

The IJ denied relief, concluding Alzainati had not sustained his burden of showing exceptional and extremely unusual hardship to Jawad.  The IJ considered the language-based difficulties Jawad might encounter if he accompanied his father to Jordan to be typical of minors in similar situations, and there was no evidence of Alzainati's claimed inability to obtain or afford treatment for Jawad's medical conditions.

The BIA summarily affirmed the IJ's decision.  Alzainati did not petition for review of the BIA's decision.  Instead, he filed a motion to remand, which the BIA treated as a motion to reopen.[2]  According to Alzainati, since the IJ's

---

[1](...continued)
not at issue.

[2]     A motion styled as a request for remand remains, in substance, a motion to
(continued...)

decision and the BIA's affirmance, Jawad had become depressed with suicidal ideations and his grades had gone down. In support of the motion, he submitted a psychologist's assessment concluding, among other things, the prospect of his father's deportation had significantly increased a previously diagnosed "adjustment disorder with anxiety and depressive features" such that Jawad was "in need of ongoing mental health care, a medications consultation, and active monitoring for suicidal ideation." Admin. R. at 47-48. He also submitted comparative documentation of Jawad's academic performance before and after the agency's decisions.

The BIA considered most of the evidence new and previously unavailable, but found it was "insufficient to establish that reopening was warranted" because it was unlikely Alzainati would be able to establish the requisite level of hardship required for cancellation. *Id.* at 2. According to the BIA the new evidence did not indicate Jawad was "currently attending counseling sessions with a medical professional or taking any medication for his condition." *Id.* at 3. The new evidence also "failed to establish that [Jawad's] mental health needs could not be adequately addressed by the health care system in Jordan." *Id.* at 3. Accordingly,

_____

[2](...continued)
reopen. *In re L-V-K*, 22 I. & N. Dec. 976, 978 (BIA 1999). A motion to reopen seeks to present evidence that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).

the BIA concluded Alzainati had not met the "heavy burden" necessary to prevail on his motion and denied it. *Id.* This petition for review followed.

Discussion

The Attorney General concedes this court's jurisdiction to consider a constitutional claim or a question of law under 8 U.S.C. § 1252(a)(2)(D) (a provision enacted by the REAL ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310), but maintains any such claim or question lacks merit. He also contends, citing 8 U.S.C. § 1252(a)(2)(B)(I), this court lacks jurisdiction over Alzainati's petition to the extent it challenges the BIA's decision that the "exceptional and extremely unusual hardship" required by § 1229b(b)(1)(D) would unlikely be established if the motion to reopen were granted. We agree with both points.

Our jurisdictional analysis begins with the underlying removal order. Congress explicitly withdrew appellate review of decisions regarding, among other things (and subject to the REAL ID Act exception), cancellation of removal under § 1229b:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and **except as provided in subparagraph (D)**, and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--

> (I) any judgment regarding the granting of relief under
> section 1182(h), 1182(I), **1229b**, 1229c, or 1255 of this
> title[.]

8 U.S.C. § 1252(a)(2)(B)(I) (emphasis added). Not all judgments regarding

cancellation under § 1229b are subject to the jurisdictional bar. *See Sabido*

*Valdivia v. Gonzales*, 423 F.3d 1144, 1149 (10th Cir. 2005) (explaining that

§ 1252(a)(2)(B) "prohibit[s] review only of those 'judgments' [under § 1229b]

that are discretionary in nature"). But the IJ denied cancellation of removal

because Alzainati had not established that removal would result in exceptional

and extremely unusual hardship to Jawad. The BIA summarily affirmed. That

hardship determination involved an exercise of discretion insulated from our

review under § 1252(a)(2)(B)(I). *See Morales Ventura v. Ashcroft*, 348 F.3d

1259, 1262 (10th Cir. 2003). Apparently recognizing the limits of judicial

oversight, Alzainati did not petition for review of the BIA's decision. Instead he

sought to remand (reopen) and has appealed from the denial.

We must decide if Alzainati can indirectly obtain judicial review of a

discretionary ruling that is not directly reviewable. With that in mind we look at

the BIA's denial of the motion to reopen in light of the jurisdictional bar of

§ 1252(a)(2)(B)(I).[3] We have said the denial of a motion to reopen "is considered

---

[3]     The Attorney General relies on *Perales-Cumpean v. Gonzales*, 429 F.3d
977, 982 (10th Cir. 2005), for the proposition that § 1252(a)(2)(B)(I) precludes us
from "'reviewing decisions under § 1229b that involve the exercise of the
agency's discretion,' except where a constitutional claim or question of law is
(continued...)

a final, separately appealable order." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361

(10th Cir. 2004). In *Infanzon*, we also said "[o]nly where judicial review of the

underlying order is precluded is [review of the] denial of a subsequent motion to

reopen also precluded." *Id.* at 1362. But in *Infanzon*, § 1252(a)(2)(B)(I) was not

at issue, as the underlying removal order concerned the denial of asylum and

withholding of removal, forms of relief not enumerated in that provision. Instead,

we considered the broader companion provision, § 1252(a)(2)(B)(ii), which bars

jurisdiction over any "decision or action of the Attorney General . . . the authority

for which is specified . . . to be in the discretion of the Attorney General." We

concluded § 1252(a)(2)(B)(ii) did not deprive us of jurisdiction to review the

denial of a motion to reopen where the alien sought to submit pertinent evidence

not previously available, allegedly due to ineffective assistance of counsel.[4]

---

[3](...continued)
raised." Resp. Br. at 8. *Perales-Cumpean*, however, did not concern the denial of
a motion to reopen, so, while relevant, it does not sufficiently inform our
analysis. The Attorney General also relies on several cases from other circuits
holding a court lacks jurisdiction to review the denial of a motion to reopen where
the court lacked jurisdiction to review the underlying order of removal if the
removal decision involved a discretionary determination. *See id.* at 9, n.4. Our
ensuing discussion addresses the jurisdictional relationship between underlying
orders and motions to reopen.

[4]     We pause to note and clarify an apparent inconsistency in *Infanzon*. In
*Infanzon*, we first concluded that we lacked jurisdiction to review the denial of an
underlying removal order because the petition for review was untimely. 386 F.3d
at 1361. We next determined we had jurisdiction to review the denial of a motion
to reopen because such motions are "separately authorized by 8 U.S.C.
§ 1229a(c)(6) (describing requirements for motion to reopen), as further

(continued...)

With respect to § 1252(a)(2)(B)(I) and motions to reopen, a proper jurisdictional analysis must consider the basis for the denial of the motion to reopen. The jurisdictional bar § 1252(a)(2)(B)(I) raises on judicial review of discretionary decisions enumerated in that statute is, standing alone, an insufficient basis to preclude review of the denial of a subsequent motion to reopen. Rather, like a number of our sister circuits, we embrace a more narrow holding. Because § 1252(a)(2)(B)(I) precludes our review of an "exceptional and extremely unusual hardship" determination under § 1229b(b)(1)(D), it also precludes our jurisdiction to review the BIA's denial of a motion to reopen because the alien still has failed to show the requisite hardship. *See Parvez v. Keisler*, 506 F.3d 93, 96 (1st Cir. 2007); *Fernandez v. Gonzales*, 439 F.3d 592, 603 (9th Cir. 2006)[5]; *Martinez-Maldonado v. Gonzales*, 437 F.3d 679, 682-83

---

[4](...continued)
explicated by 8 C.F.R. § 1003.2(c)." *Id.* We then stated, "Only where judicial review of the underlying order is precluded is [review of the] denial of a subsequent motion to reopen also precluded." *Id.* at 1362. Thus it may appear we violated this precept by exerting jurisdiction to review the denial of the motion to reopen even though we lacked jurisdiction over the denial of the underlying removal order because the petition for review was untimely. But we read *Infanzon* as standing for the proposition that we lack jurisdiction over motions to reopen when jurisdiction over the underlying removal order is precluded by statute rather than by the failure to file a timely petition for review of the underlying removal order. *See id.* (relying on cases holding that statutory withdrawal of jurisdiction over underlying removal orders barred review of motions to reopen). As we have explained, there was not a statutory bar in *Infanzon*, but there is one here.

[5]     In *Fernandez*, the Ninth Circuit identified an exception to the jurisdictional

(continued...)

(7th Cir. 2006)[6]; *Obioha v. Gonzales*, 431 F.3d 400, 405-08 (4th Cir. 2005); *see also Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 121-22 (2d Cir. 2008) (concerning extreme hardship necessary for suspension of deportation, the statutory predecessor to cancellation); *Rodriguez v. Ashcroft*, 253 F.3d 797, 800 (5th Cir. 2001) (per curiam) (same, under the transitional rules).

In contrast to where the BIA denies a motion to reopen on the merits of a previously-considered hardship issue, some other circuit courts have concluded

---

[5](...continued)
bar to review of the denial of a motion to reopen because the alien still has not established hardship: "[w]here the relief sought is formally the same as was previously denied but the evidence submitted with a motion to reopen is directed at a different basis for providing the same relief," that is, where the evidence is "not cumulative." 439 F.3d at 601. The court gave one example of such a motion—where the new evidence pertains to "a newly-discovered, life-threatening medical condition afflicting a qualifying relative." *Id.* at 601-02. The court rationalized this exception as a "safety valve that ensures that the agency at least considers new information, even if its ultimate and unreviewable judgment denies the relief sought." *Id.* at 602 (quotation and ellipsis omitted). As we read this exception, it is jurisdictionally indistinguishable from § 1252(a)(2)(D), the REAL ID Act exception identified in § 1252(a)(2)(B)(I), which likewise permits us to review a due process claim that the BIA failed to consider new evidence en route to issuing an otherwise unreviewable, discretionary judgment. *See Hanan v. Mukasey*, 519 F.3d 760, 764 (8th Cir. 2008) ("Because an allegation of wholesale failure to consider evidence implicates due process, we have jurisdiction [under the REAL ID Act] to review this constitutional question."). We therefore decline to apply the *Fernandez* exception in this case.

[6]     We note that the Seventh Circuit has since taken an even narrower view of jurisdiction over review of decisions on motions to reopen, that § 1252(a)(2)(B)(ii) bars such review except "to the extent provided by § 1252(a)(2)(D)." *Kucana v. Mukasey*, 533 F.3d 534, (7th Cir. 2008), *cert. granted sub nom. Kucana v. Holder*, 129 S. Ct. 2075 (Apr. 27, 2009). This view is contrary to our holding in *Infanzon*, 386 F.3d at 1361, by which we are bound.

§ 1252(a)(2)(B)(I) does not preclude limited judicial review when the BIA denies a motion to reopen a cancellation case on a procedural ground, such as the failure to exercise an adequate opportunity to pursue the requested relief before the IJ, *Obioha*, 431 F.3d at 407; filing a deficient motion to reopen, *id.*; or failing to introduce previously unavailable, material evidence, *Manzano-Garcia v. Gonzales*, 413 F.3d 462, 468-69 (5th Cir. 2005). This distinction further supports the jurisdictional significance, for § 1252(a)(2)(B)(I) purposes, of the ground on which the BIA bases its denial of a motion to reopen.

The proposition can be stated rather simply. If the BIA decides, in an exercise of agency discretion, an alien has not produced sufficient evidence to warrant a finding of exceptional and extremely unusual hardship, we cannot review that decision. However, if, in deciding a motion to reopen, the BIA refuses, contrary to established procedures, to consider new and pertinent evidence, due process rights are implicated. Then we exercise limited jurisdiction to review the propriety of the BIA's failure to consider the evidence and, in an appropriate case, can require consideration of the evidence. That does not mean we can dictate, or even review, the merits of the subsequent decision, if it considered all appropriate evidence. But if, in deciding a motion to reopen the BIA credits and considers the new evidence submitted in support of the motion and determines the alien would still not be entitled to a finding of exceptional and extremely unusual hardship, we cannot review that merits decision even if it takes

-10-

the form of a denial of a motion to reopen.  To hold otherwise would merely be a time-consuming and expensive exercise in formalism.  Requiring the agency to hold a hearing "just for drill" is unnecessary and unwarranted.  At most we can require the agency to fairly consider appropriate evidence.  We have no license to dictate the method such consideration must take.

Applying the foregoing, we conclude that our jurisdiction to review the BIA's denial of Alzainati's motion to reopen is constrained by § 1252(a)(2)(B)(i). The BIA's denial of the motion to reopen was, like the underlying order of removal, based on the merits of the hardship issue, which is a discretionary determination.  Accordingly, § 1252(a)(2)(B)(I) precludes our review of the BIA's denial of the motion to reopen unless the exception identified in § 1252(a)(2)(B), namely, § 1252(a)(2)(D), applies.  That section permits judicial review of constitutional claims and questions of law.[7]  It provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).

---

[7] We do not address whether § 1252(a)(2)(B)(I) precludes our jurisdiction to review the BIA's denial of a motion to reopen on the ground that the new evidence is unlikely to establish extreme hardship where there has been no underlying discretionary decision regarding cancellation.

As we have construed this provision, we retain jurisdiction to review constitutional claims and questions of law involving statutory construction. *See Diallo v. Gonzales*, 447 F.3d 1274, 1281-82 (10th Cir. 2006). "However, challenges directed solely at the agency's discretionary and factual determinations remain outside the scope of judicial review." *Id.* at 1281. Our task, then, is to determine whether Alzainati has raised constitutional claims or questions of law within the meaning of § 1252(a)(2)(D), taking into consideration that "[a]n alien does not present a colorable constitutional claim capable of avoiding the jurisdictional bar by arguing that the evidence was incorrectly weighed, insufficiently considered, or supports a different outcome." *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007). We review any valid constitutional claims or questions of law de novo. *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1019 (10th Cir. 2007).

Although Alzainati listed five issues for review in his brief,[8] his arguments are, for the most part, not specifically tied to them. The first point assumes the new evidence is so alarming that, had it been available prior to the removal

---

[8] Those issues are: (1) "Did the BIA err in failing to reopen and remand the case for further evidence on hardship that would accrue to [Jawad]?"; (2) "Did the Board fail to adequately consider evidence from a forensic psychologist that [Jawad] [w]as depressed and suicidal about his father's removal?"; (3) "Did the BIA err in finding that [Jawad] would go to Jordan with his father, given that there was no evidence in the records to support this assertion?"; (4) "Did the Board follow precedent case law and statutory regulations in rendering their decision?"; and (5) "Did the Board's action violate the . . . right [of Alzainati and Jawad] to procedural and substantive due process?" Pet'r's Br. at 8.

hearing, the IJ likely would have found the requisite hardship. This, however, is simply a weight-of-the-evidence argument, which does not state a colorable constitutional claim, *see Kechkar*, 500 F.3d at 1084, but instead falls within the jurisdictional bar of § 1252(a)(2)(B)(I).[9]

As we read the remainder of Alzainati's brief, he presents three other contentions facially premised on due process. In considering those contentions, we are mindful that "cancellation of removal is not a liberty or property interest." *Torres de la Cruz*, 483 F.3d at 1020. Thus, "[a]n alien in removal proceedings is entitled only to the Fifth Amendment guarantee of fundamental fairness," or in other words, "only to procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner." *Schroeck v. Gonzales*, 429 F.3d 947, 952 (10th Cir. 2005) (quotations omitted). To prevail on a due process claim, an alien must establish not only error, but prejudice. *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1165 (10th Cir. 2004).

Alzainati first argues the BIA's failure to consider or address Jawad's school records is a due process violation. We have jurisdiction under § 1252(a)(2)(D) to review the first aspect of this argument "[b]ecause an allegation of wholesale failure to consider evidence implicates due process."

---

[9] Alzainati suggests he now has additional evidence of Jawad's treatment but no way to present it here. His path to relief, if any, does not run through this court. *See, e.g.*, 8 C.F.R. § 1003.2(c)(3)(iii) (permitting a second motion to reopen if it is "[a]greed upon by all parties and jointly filed").

*Hanan v. Mukasey*, 519 F.3d 760, 764 (8th Cir. 2008). While the BIA did not expressly refer to the school records in its decision, it noted "the majority of the documentation" was "new and previously unavailable." Admin. R. at 2. Because the new evidence consisted only of two exhibits—approximately twenty-seven pages of school records and the psychologist's three-page evaluation—the BIA's reference to "the majority of the documentation" allays any constitutional concern we might have that the BIA wholly failed to consider the school records. The second aspect of this argument, that the BIA violated due process by not addressing the school records in its order, is just a quarrel about the level of detail required in the BIA's analysis, not a colorable due process claim. *See Kechkar*, 500 F.3d at 1080 (explaining that sufficiency-of-consideration arguments are not constitutional claims); *see also Mehilli v. Gonzales*, 433 F.3d 86, 94 (1st Cir. 2005) (holding that an argument that an IJ failed to explicitly consider certain evidence was properly viewed as a claim that substantial evidence did not support the IJ's credibility finding rather than as a constitutional challenge).

Next, Alzainati takes issue with the length of the BIA's substantive discussion ("a mere three (3) paragraphs," Pet'r's Br. at 16), contending it amounts to a failure by the BIA to adequately articulate its reasoning and, therefore, is an abuse of discretion. But Alzainati has not explained how the length of the decision is determinative of its adequacy, much less of constitutional

adequacy required by fundamental fairness, and we fail to see the connection here. Accordingly, he has not stated a colorable constitutional claim.

The third and final argument we discern lies in connection with the BIA's determination that Alzainati had not shown the mental health treatment available in Jordan is inadequate. The argument posits: the BIA assumed Jawad would accompany his father to Jordan upon Alzainati's removal, and the assumption was erroneous because Jawad is a United States citizen and entitled to remain in the United States. This challenge to a factual assumption, however, cannot be recast as a constitutional claim falling under the jurisdictional safe-harbor of § 1252(a)(2)(D). *Jarbough v. Att'y Gen. of U.S.*, 483 F.3d 184, 190 (3d Cir. 2007); *see also Kechkar*, 500 F.3d at 1084 (explaining that arguments "that the evidence was incorrectly weighed, insufficiently considered, or supports a different outcome" do not raise a colorable constitutional claim). Moreover, this argument is disingenuous because Alzainati argued before the IJ that there was inadequate health care in Jordan with respect to Jawad's nearsightedness and skin rashes, a position dependent on Jawad moving with him to Jordan. Thus, in denying the motion to reopen, the BIA was within its rights to assume Jawad would accompany his father to Jordan when it noted Alzainati's failure to demonstrate inadequate mental health care there. Further, the argument is self-defeating—if Jawad remains in the United States, adequate mental health care is available.

-15-

## Conclusion

For the reasons set forth above, the petition for review is dismissed in part for lack of jurisdiction and denied in part.