FILED
United States Court of Appeals
Tenth Circuit

November 15, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

THU THUY HUYHN;
FONG THI BUI; TU THI BUI,

      Petitioners,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

      Respondent.

No. 10-9509
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

Thu Thuy Huyhn,[1] a Vietnamese citizen, was charged as being subject to

removal under 8 U.S.C. § 1227(a)(1)(A), because she procured her admission into

the United States by fraud or by willfully misrepresenting a material fact under

8 U.S.C. § 1182(a)(6)(C)(i). The government alleged that Huyhn married Phuoc

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     The two other petitioners, Fong Thi Bui and Tu Thi Bui, are Huyhn's minor children who entered the United States as derivatives on Huyhn's visa.

Bui, a United States citizen, to procure an immigration visa. After two hearings on the charge, the Immigration Judge ("IJ") ordered Huyhn removed, concluding that the charge had been proven by clear and convincing evidence. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision and dismissed the appeal. Huyhn now seeks review of the agency's decision. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

**I**

In June 2000, Bui traveled to Vietnam to visit his country of origin and to find a compatible spouse. His nephew, Thien Tuan Bui, who goes by the nickname "Se,"[2] introduced him to Huyhn. At the time, Se and Huyhn were in the process of getting divorced, but Bui testified that Se did not inform him of the marriage. The divorce became final in August 2000.

Bui and Huyhn spent time together in Vietnam in the summer of 2000 and continued to correspond after Bui returned to the United States. In the summer of 2001, Bui petitioned for a visa on behalf of Huyhn. Huyhn was admitted to the United States on a K-1 non-immigrant fiancée visa in August 2001 and married Bui in September of the same year. In November 2002, Bui and Huyhn attended Huyhn's adjustment of status interview. After the interview, Huyhn was granted conditional resident status.

---

[2]     We refer to Thien Tuan Bui hereinafter as "Se" to avoid confusion with Phuoc Bui.

Huyhn testified that the marriage was happy for the first six months but that things changed in March or April of 2002 when she discovered that Bui was involved with another woman. She further testified that she and Bui continued to live together after that time, although they did not share a bedroom or engage in a sexual relationship after March 2002.

Bui testified that his marriage to Huyhn was initially harmonious, but they never consummated the marriage because Huyhn wanted to wait until they had a traditional wedding ceremony in Vietnam. Bui testified that "things changed" once Huyhn obtained her "green card." He explained that he became suspicious when he found out that Huyhn called her ex-husband, Se, in Vietnam, that she had made plans to return to Vietnam in December without telling him, and that she was looking for a United States citizen to sponsor Se to enter the United States.

In December 2002, Huyhn and Bui traveled separately to Vietnam. Bui testified that he intentionally planned to arrive before Huyhn so that he could investigate his suspicions. Bui visited Se's home and found letters and photographs that Huyhn sent Se from the United States. Bui testified that he confronted Huyhn in Vietnam when he discovered that she was staying with Se and that during that conversation Huyhn told him she was still Se's wife and that she had only been with Bui to get a green card. Bui testified that he was very angry and that he told Huyhn he was going to return to the United States and report her to immigration officials. He further testified that they offered to pay

him money if he would refrain from reporting Huyhn. When Bui refused, Se and Huyhn threatened him.

When Bui returned to the United States in February 2003, he reported Huyhn's fraud to the Department of Homeland Security ("DHS"). Bui filed for an annulment of his marriage on February 18, 2003, and submitted a "Petition for Declaration of Invalidity" to the Denver District Court, alleging that his marriage should be declared invalid based on Huyhn's fraud.

DHS requested that Bui provide some evidence of the alleged fraud. Bui submitted a recorded telephone conversation involving himself, Huyhn, and Se, as well as a written statement. The transcript of the tape shows that Bui asked Huyhn, "[y]ou and I are we husband and wife?" Huyhn responded, "[n]ot in reality, but on paper we are." Se states to Bui, "[y]ou and I are uncle and nephew. But treat us just as you are doing it to anyone else. You helped my wife to enter the country. It's 50% successful already. Now you just tell me the price." Bui later asks Huyhn if she is happy with the $15,000 amount Se agreed to pay him to continue the fraudulent marriage and Huyhn responds, "[Se] is my husband. If he is happy, then I'll be happy."

DHS Immigration and Customs Enforcement Agent Cory Voorhis testified before the IJ about his investigation into Bui's allegations, including his interviews with Bui and Huyhn. Voorhis stated that Huyhn told him that her marriage had effectively ended in March 2002, although she admitted she did not

tell this to the immigration official at her adjustment of status interview in November 2002. Voorhis also asked Huyhn if Se had agreed to pay Bui $15,000 to continue their marriage. Huyhn initially denied that there had been a payment, but began crying and admitted to the payment when Voorhis told her that he had a tape of the February 2003 telephone conversation.

The IJ ordered Huyhn removed from the United States. On Huyhn's appeal, the BIA remanded to the IJ to prepare a separate oral or written decision for review. On remand, the IJ read his February 23, 2006, decision into the record as a separate oral decision. The IJ found by clear and convincing evidence that Huyhn "procured her admission or her documentation or benefit to come to the United States by fraud by entering into a sham marriage with Mr. [Bui]" and that Huyhn was therefore removable as charged.

On Huyhn's second appeal, the BIA issued a single-member opinion affirming the IJ's decision and dismissing the appeal. The BIA stated that "[i]n particular, we find no clear error in the [IJ's] extensive findings of fact, including his credibility findings," and that "in light of the [IJ's] findings of fact, we find no error in his determination that the respondents are removable as charged."

## II

"A BIA order dismissing an appeal constitutes a final order of removal which we review pursuant to 8 U.S.C. § 1252(a)(1) and (b)(2). We may consult the oral decision of an IJ to the extent the BIA's order incorporates its reasoning."

-5-

Witjaksono v. Holder, 573 F.3d 968, 973 (10th Cir. 2009) (citation omitted). "We review the BIA's factual findings for substantial evidence." Id. at 977. Under this standard, "factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quotation omitted). We review de novo questions of law and constitutional challenges. See Ferry v. Gonzales, 457 F.3d 1117, 1126 (10th Cir. 2006).

**A**

The IJ indicated that Huyhn's credibility, and the credibility of most of the other witnesses, was lacking. He concluded that the only credible witnesses were Voorhis and Huyhn's daughter. Huyhn complains that the IJ's adverse credibility determination was not supported by the record and that the IJ "ma[de] no assertions of inconsistency, problematic demeanor determinations or any other basis for finding lack of credibility." Huyhn has not accurately characterized the IJ's decision.

The IJ summarized the testimony from the hearing, as well as other evidence, and pointed out several inconsistencies with Huyhn's testimony. For example, the IJ recounted that Huyhn's daughter testified Bui was upset when he found out Huyhn had been corresponding with her ex-husband in Vietnam. The IJ noted that Huyhn denied that she had done so, but the IJ found that there had in fact been correspondence between Huyhn and her ex-husband, and this finding was based on letters that were submitted into evidence. The IJ also found that

-6-

Huyhn lied about the $15,000 payment from her ex-husband to Bui. Further, the IJ found that Huyhn lied about a $250 payment to a woman Huyhn wanted to marry her ex-husband so that he could enter the United States; a canceled check and other correspondence in the record supported the IJ's finding. We conclude that the IJ provided a sufficient basis for his credibility determination, and that the BIA properly affirmed the IJ's decision.

**B**

Huyhn also argues that the agency's decisions violate the Administrative Procedure Act ("APA") and her due process rights because they are conclusory. We disagree. An agency is not required to provide a lengthy explanation of its decision as long as it explains its action "with such clarity as to be understandable." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

Both the IJ and the BIA decisions satisfy this standard. The IJ provided sufficient factual findings to support his decision that Huyhn fraudulently entered into a marriage with Bui for the purpose of gaining admission into the United States. The BIA's decision provides adequate reasoning. It finds no clear error in the IJ's factual findings, and relies on those factual findings to conclude that the IJ properly found Huyhn removable as charged. Huyhn has accordingly failed to establish a violation of the APA.

Huyhn's APA-related due process claim likewise fails because she has not demonstrated that the agency decisions are fundamentally unfair. See Alzainati v.

-7-

Holder, 568 F.3d 844, 851 (10th Cir. 2009) ("[A]n alien in removal proceedings is entitled only to the Fifth Amendment guarantee of fundamental fairness." (quotation omitted)).

## C

Huyhn raises several additional due process arguments that are unrelated to the APA. First, she complains that the record exhibits were not "provided" or "offered" to her in preparation for her appeal before the BIA. But Huyhn fails to explain what steps, if any, she took to obtain the exhibits. BIA Practice Manual Rule 1.5 allows a party to obtain any portion of the record. Because Huyhn does not allege, much less demonstrate, that the BIA refused a proper request to obtain exhibits, she has not demonstrated error by the agency.

Next Huyhn argues that her case must be remanded because the government failed to produce an adequate transcript of her two hearings.

> As in other contexts, the government's failure to produce an adequate transcript does not necessarily rise to the level of a due process violation mandating reversal or remand. Rather, to demonstrate a denial of due process and obtain relief, an alien must show that the deficient transcript prejudiced [her] ability to perfect an appeal. That is, an alien must show that the gaps in the transcript relate to matters material to [her] case and that they materially affect [her] ability to obtain meaningful review.

Witjaksono, 573 F.3d at 974-75 (citations, quotations, and alterations omitted). Huyhn claims there are 109 "indiscernible" notations in the record, but she does not articulate how these gaps in the transcript were material or materially affected

-8-

her ability to obtain meaningful appellate review. Similarly, Huyhn asserts that the IJ did not adequately identify and mark the exhibits in the administrative record, but she again fails to explain how this alleged deficiency prejudiced her case. Accordingly, there is no cause for remand based on these contentions. See id. at 975.

**D**

Finally, Huyhn asserts that this case should be remanded to the IJ to determine whether the credibility of Voorhis, the DHS agent who investigated her case, should be reexamined in light of his actions subsequent to this case. Citing to extra-record evidence, Huyhn contends that Voorhis was terminated from his employment at DHS "amid a flurry of accusations involving his character." But we may not consider this argument because Huyhn did not raise it before the BIA. See Torres de la Cruz v. Maurer, 483 F.3d 1013, 1017 (10th Cir. 2007) ("[W]e have jurisdiction only over those claims that were presented to the BIA and were properly appealed to this court . . . ."). Although Huyhn asserts that she could not have raised this issue in her appeal to the BIA because Voorhis' termination was not administratively final until May 2010, she nevertheless must raise this issue with the agency before obtaining review in this court. Cf. 8 C.F.R. § 1003.2(c)(1) (governing a motion to reopen based on new facts).

## III

For the foregoing reasons, we **DENY** the petition for review.

Entered for the Court


Carlos F. Lucero
Circuit Judge