**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

IGOR LAVRENOV, a/k/a Igor
Vladislavovich Lavrenov,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9535
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

Igor Lavrenov, a native and citizen of Russia, seeks review of a decision by

the Board of Immigration Appeals (BIA) that dismissed Lavrenov's appeal from a

removal order entered by an Immigration Judge (IJ).  Exercising jurisdiction under

8 U.S.C. § 1252, we deny review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I. Background

Lavrenov seeks asylum in the United States for the third time. United States Citizenship and Immigration Services denied his first application in 2009 because it deemed him not credible. Lavrenov applied again in 2017, but that application was never adjudicated. Lavrenov filed the operative application defensively in 2018, seeking asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT).

In connection with his 2018 application, Lavrenov asserted that in 2015 men dressed in black military-style uniforms broke into his apartment, attacked him and his family, kidnapped him, further beat him at an unknown location, and deposited him at the entrance to a hospital. He claimed the attack resulted from his work investigating corruption as an unpaid assistant to a local elected official and that the FSB, Russia's federal security service, must have been behind the attack in part because ordinary citizens in Russia cannot purchase the black military-style uniforms worn by his attackers. He further speculated that despite reports the local official died of a stroke, government operatives in Moscow directed the official's assassination.

The IJ observed strong similarities between this story and the one Lavrenov told in his 2009 application, except that in his 2009 application Lavrenov claimed that the Russian mafia sponsored the attack. And, as recounted by the BIA:

> [T]he [IJ] noted the following material and significant inconsistencies:
> 1) [Lavrenov] testified that the Russian mafia took over his company,
> although he recanted this assertion when confronted with his contrary

statement in his 2009 asylum application and claimed that he was able to regain ownership; 2) he returned to Russia after visiting the United States even though he claimed to have experienced a violent abduction in 2009 in Russia and he testified that his reason for returning was to reclaim his business, although he indicated in his 2017 application that he returned because his father's health was deteriorating; and 3) he testified, and indicated in his 2018 application, that he met [the local elected official] in 2006, although his 2017 application indicated that he met him in 2012.

Furthermore, the [IJ] noted the following omissions: 1) he failed to include the 2009 violent attack against him by the Russian mafia (which he included in his 2009 asylum application) in both his 2017 and 2018 applications; and 2) he failed to include many of the details contained in his 2017 application regarding numerous phone calls, a police detention following a 2012 march against President Putin and several beatings, in his 2018 application. In addition, she found him nonresponsive and evasive when asked on cross-examination about why he omitted these details from his 2018 application. Finally, the [IJ] found his explanations implausible regarding: 1) why he attempted to disavow the first page of his declaration in his 2017 application, even though it contained many of the same details as [his] testimony, and included his signature on the second page; 2) why he would be an assistant to an elected official when that type of job more likely would be held by an actual government employee; 3) why [the local elected official] would be killed by Moscow, 4) why only SWAT team members can obtain black military-style uniforms, and 5) why no investigation was conducted into [the local elected official's] alleged attempted assassination.

Admin. R. Vol. 1 at 3–4 (citations omitted).

The IJ found Lavrenov not credible and denied his 2018 application. Lavrenov appealed to the BIA. He claimed, among other things, that the IJ erred by proceeding given that detention officials denied him access to a laptop containing unspecified documents that would corroborate his claims[1] and that his detained status otherwise

---

[1] According to Lavrenov, nobody else can access the laptop's contents because he secured it with facial-recognition technology.

prevented him from marshaling evidence. He also filed a motion to remand for the IJ to re-consider her adverse credibility finding in light of new evidence he submitted for the first time on appeal to the BIA. The BIA denied his motion to remand, rejected his due process claims, and adopted the IJ's adverse credibility finding.

## II. Discussion

### A. Motion to Remand

Lavrenov first argues that the BIA erred by failing to grant his motion to remand so the IJ could consider new evidence he submitted on appeal and unspecified documents from his laptop.

"A motion styled as a request for remand remains, in substance, a motion to reopen." *Alzainati v. Holder*, 568 F.3d 844, 847 n.2 (10th Cir. 2009). "A motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." 8 C.F.R. § 1003.2(c)(1). The BIA concluded that Lavrenov did "not establish[] that the proffered new evidence could not have been obtained prior to his merits hearing or would change the result in his case." Admin. R. Vol. 1 at 6.

"We review the BIA's decision on a motion to reopen only for an abuse of discretion." *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013) (alterations and internal quotation marks omitted). "The BIA does not abuse its discretion when its rationale is clear, there is no departure from established policies, and its statements are a correct interpretation of the law, even when the BIA's decision is

4

succinct." *Id*. (internal quotation marks omitted). "[M]otions to reopen immigration cases are plainly disfavored," and the moving party "bears a heavy burden to show the BIA abused its discretion." *Id.* (alterations and internal quotation marks omitted).

With respect to the prior availability of the new evidence Lavrenov submitted for the first time on appeal to the BIA, he argued to the BIA only that it "was beyond [his] capabilities to obtain while he was detained and unrepresented." Admin. R. Vol. 1 at 20. On appeal to this court he adds generalized remarks about the challenges of marshaling evidence from a detention center.[2] But other than his argument with respect to the documents allegedly trapped inside his laptop, Lavrenov does not state with any specificity why any piece of evidence could not be obtained prior to the evidentiary hearing.[3]

With respect to the documents on his laptop, his argument fails because he did not tell the BIA and does not tell us with any specificity what information those documents contain or how that information relates to his case. He therefore did not

---

[2] To the extent Lavrenov's argument relies on evidence that he did not submit to the IJ or the BIA, we do not consider that evidence. We must decide his petition "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A).

[3] He does observe that an expert report was unavailable at the time of the hearing because he delayed in hiring the expert until after the hearing. *See* Aplt. Reply Br. at 6–7. But this self-imposed delay says nothing about whether he *could have* engaged the expert sooner and thereby obtained the report prior to the hearing. *Cf.* 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings shall not be granted unless . . . that evidence sought to be offered . . . could not have been discovered or presented at the former hearing.").

show that the documents "would likely change the result in the case." *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992). The BIA did not abuse its discretion in denying the motion to remand.[4]

## B. Adverse Credibility Finding

Lavrenov also challenges the BIA's adverse credibility finding. We review the BIA's findings of fact under the substantial evidence standard. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).[5] Under that standard, "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (alterations and internal quotation marks omitted). The agency's findings of fact "are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the

---

[4] To the extent Lavrenov's argument can be construed as challenging the agency's actions related to the laptop's contents on due process grounds, we reject it for a similar reason. To prevail on a due process claim, Lavrenov would need to establish "both that he was deprived of due process and that that deprivation prejudiced him." *Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017). The BIA concluded that since Lavrenov never "indicated the specific evidence he wished to submit," he did "not establish[] that the manner in which the [IJ] conducted the proceeding demonstrates prejudice against him." Admin R. Vol. 1 at 6. Because Lavrenov continues to elide the laptop's contents and does not otherwise tell us how their omission from the proceedings prejudiced him, we agree with the BIA.

[5] This appeal involves a single BIA member's brief order under 8 C.F.R. § 1003.1(e)(5). We review that order as the final agency determination, limiting our review to the issues specifically addressed therein. *Diallo v. Gonzales*, 447 F.3d 1274, 1278–79 (10th Cir. 2006). We may, however, consult the IJ's decision "to give substance to the BIA's reasoning." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009).

6

contrary." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012) (internal quotation marks omitted); *see also Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (explaining that "[i]t is not our prerogative to reweigh the evidence, but only to decide if substantial evidence supports the agency's decision" (alterations and internal quotation marks omitted)). Our review is limited to the agency record that formed the basis for the IJ's order of removal. 8 U.S.C. § 1252(b)(4)(A).

Lavrenov does not challenge any of the support for the IJ's adverse credibility finding that the BIA recited. He instead focuses only on additional observations made by the IJ that Lavrenov's unsubstantiated assumptions about who attacked him were less plausible than other possible theories relating to the identity of the alleged attackers.[6] But he does not confront the fact that the IJ made these observations only after finding Lavrenov's testimony regarding the predicate facts from which they stem to be untruthful. And he does not explain why questioning this isolated aspect of the IJ's adverse credibility finding undermines that finding given the numerous and specific other reasons provided by the IJ to support the notion that Lavrenov is not credible. *Cf. Htun v. Lynch*, 818 F.3d 1111, 1120 (10th Cir. 2016) ("With three separate areas where the evidence supports a finding of inconsistency and

[6] Lavrenov's opening brief vaguely references other aspects of his story the IJ found implausible but does not cite any other portions of the IJ's decision or the record and does not otherwise provide enough argument or detail for us to review these aspects of the IJ's findings. *See Kelley v. City of Albuquerque*, 542 F.3d 802, 819 (10th Cir. 2008) ("[P]erfunctory" allegations of error that "fail[] to frame and develop an issue" are insufficient "to invoke appellate review." (internal quotation marks omitted)).

7

nondisclosure, a reasonable adjudicator would not be compelled to find [the petitioner] credible."); *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) ("[W]e must uphold the IJ's adverse credibility determination so long as even one basis is supported by substantial evidence."). The IJ's adverse credibility determination finds substantial support in the record and we will not question it.

## C. Convention Against Torture

Lavrenov posits that the BIA erred by rejecting his CAT claim based on its adverse credibility finding. But we have affirmed the BIA's rejection of CAT claims in other cases on this basis and believe it is appropriate to do so here. *See, e.g.*, *Ismaiel v. Mukasey*, 516 F.3d 1198, 1206 (10th Cir. 2008) ("[T]he IJ and BIA could reasonably refuse to believe [the petitioner's] claims of past torture and, reviewing all the evidence, remain unpersuaded that [he] had satisfied his burden of proving that he would probably be tortured if returned to [his country of origin]."); *Niang v. Gonzales*, 422 F.3d 1187, 1202 (10th Cir. 2005) ("Here, our review of [the petitioner's] CAT claim is controlled by the permissible finding that she is untruthful.").

## III. Conclusion

The petition for review is denied.

Entered for the Court

Gregory A. Phillips
Circuit Judge

8