**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALEJANDRO MORENO VILLEGAS,

    Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

    Respondent.

No. 19-9588
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.
_____

Petitioner Alejandro Moreno Villegas, a Mexican national, petitions for review

of a Board of Immigration Appeals (BIA) decision affirming the denial of his

application for cancellation of removal. Most of the petition challenges the BIA's

discretionary hardship determination, which we lack jurisdiction to consider.

Accordingly, we dismiss the petition in part for lack of jurisdiction. To the extent the

_____

* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

petition asserts that Petitioner's due-process rights were violated because the BIA failed to properly evaluate the evidence, we deny the petition for review.

I

Petitioner entered the United States in 2000 and has remained here since. In 2017 the government issued him a notice to appear in removal proceedings, charging that he was present in this country without having been lawfully admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner conceded the charge and applied for cancellation of removal. Cancellation of removal is a form of discretionary relief that requires a noncitizen to show, among other things, that his "removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child, who is a citizen of the United States." 8 U.S.C. § 1229b(b)(1)(D).[1]

Petitioner predicated his application on the hardship facing his four children, all of whom are U.S. citizens. He testified before an immigration judge (IJ) as follows: His children were ages 15, 13, 9, and 5. His two eldest children, A.G. and J.G., attended a preparatory academy and had seen a therapist. He had told the therapist that his eldest son, A.G., was not working as hard at school, he would come home from school and sleep, and he would not eat. He also saw changes in his daughter, J.G., who seemed distracted. His third child, D.G., attended the same school and had "been acting up with

---

[1] An applicant must also show he was physically present in the United States for the ten years preceding his application, he was a person of good moral character during that time, and he was not convicted of any disqualifying crimes. *See* 8 U.S.C. § 1229b(b)(1)(A)-(C). If the applicant makes this showing, he must persuade the Attorney General to favorably exercise his discretion and grant relief. Petitioner satisfied the first three statutory criteria.

his mother." Admin. R. at 180. Petitioner was very close to his children. He coached their soccer teams. They had never been to Mexico and they primarily spoke English, not Spanish. The children were insured through the state Medicaid program. He did not pay for their schooling. A comparable school in Mexico would be "very expensive." *Id.* at 182. He earns $3,500 to $3,600 per month working in construction, but a similar job in Mexico pays only about $300 per month. His wife does not work, and he believed she would be unable to afford their present standard of living if he were removed to Mexico. Nevertheless, his family wanted to remain in the U.S. if he were removed. He did not think his children would be "okay in Mexico," *id.* at 191, because there is violence and drug trafficking there, and he and his wife could not afford a comparable education for their children.

Petitioner's two eldest children also testified. A.G. said he had not been doing well at school since his father was put in removal proceedings. The home environment had changed and his dad was not as playful as he normally was. He did not want to move to Mexico because it suffers from cartels and drug violence and offers an inferior education system and lower wages. He feared that if his family stayed in the U.S., they would need to move to a less costly home and he would need to quit his school dance team to find work and help provide for his family, which would cause his grades to suffer. He said he was depressed.

J.G. testified that she was doing well in school and did not want to relocate to Mexico because she heard there are a lot of "bad people there." *Id.* at 166. She also

3

thought she would not have the same opportunities in Mexico, but she would want to move there to be with her father.

Another witness was Carla Arroyo, the clinical director of the counseling center where A.G. had seen a therapist. She did not assess A.G. herself, but she reviewed his assessment, which diagnosed him with "major depressive episodes, single episode madras." Admin. R. at 133. The therapist's notes indicated that A.G. was demonstrating changes in behavior, including hopelessness, an increase in sleeping, and self-isolation. His onset of symptoms coincided with his father's arrest. The risk factors for a child his age with depression include suicide and self-harm. A.G. viewed his family as "very cohesive," *id.* at 136, and he worried about how he would earn a living for them if his father were to be removed, which would have an additional detrimental impact on his mental health. A.G. also faced other risk factors because his father's removal would cause his mother to leave the household as well in order to find employment. Ms. Arroyo acknowledged that the only times A.G. had been seen by the therapist were on two occasions during the two weeks preceding the hearing.

Finally, the IJ heard testimony from Tyler Stockstill, who founded the youth soccer club where Petitioner's children played soccer. Mr. Stockstill confirmed that Petitioner was an assistant coach for his three older children's soccer teams. He also testified that Petitioner volunteered to work on maintenance projects for the club and helped build an indoor facility.

After considering this and other evidence, the IJ denied cancellation of removal. He observed that under BIA precedent, Petitioner was obliged to show exceptional and

4

extremely unusual hardship to a qualifying relative—hardship that was "substantially beyond the ordinary hardship that would be expected when a close family member leaves the United States." *Id.* at 83. He noted that a lower standard of living for the qualifying relative is a factor to be considered, but it generally is insufficient to satisfy the standard. He examined the foregoing testimony and acknowledged Petitioner was very close to his children. The IJ also noted the changes in A.G.'s behavior but observed that there was no evidence he had engaged in any acts of self-harm. He determined that all of Petitioner's children would suffer economic and emotional harm from being separated from their father and that A.G.—and perhaps all the children—would need therapy. Nonetheless, the IJ concluded that the evidence did not show that any of the children had a serious medical condition; although Ms. Arroyo testified that A.G. had moderate to severe depression, she did not evaluate him and he had been seen only twice in the weeks before the hearing. As for economic considerations, the IJ observed that there was no evidence the mother could not work, nor was there evidence the children would be unable to continue attending their free preparatory academy. The IJ concluded that Petitioner failed to show his children would suffer exceptional and extremely unusual hardship upon his removal.

The BIA affirmed. It noted that Petitioner's children did not have any special educational needs or serious health issues. While recognizing that A.G. had struggled with his grades recently and had been seen by a therapist for depression, the BIA determined that this evidence was insufficient to conclude that he would suffer exceptional and extremely unusual hardship, particularly because he had been seen only

5

twice—first a week before the hearing and then again only two days before the hearing. The BIA expressly acknowledged Petitioner's arguments, including that the IJ overlooked that his children were gifted students, but it concluded that the IJ correctly considered the evidence and found that the relevant hardship factors, considered cumulatively, did not satisfy the hardship standard.

II

Petitioner now essentially asks us to reconsider the BIA's discretionary hardship decision. Indeed, throughout his brief Petitioner recites the evidence before the IJ and asserts that it demonstrates that the hardship facing his children is substantially beyond what would normally befall a qualifying relative. He therefore concludes that the BIA erred "when it . . . determined that [he] had not demonstrated that his four U.S. citizen children would suffer exceptional and extremely unusual hardship." Pet'r Br. at 18.

Under 8 U.S.C. § 1252(a)(2)(B)(i), however, we lack jurisdiction to review "the discretionary aspects of a decision concerning cancellation of removal," including "the determination of whether the petitioner's removal . . . would result in exceptional and extremely unusual hardship to a qualifying relative." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (internal quotation marks omitted). Petitioner seems to suggest that we have jurisdiction to review this determination as a question of law under 8 U.S.C. § 1252(a)(2)(D), but we disagree. "A petitioner can raise a 'question of law' under § 1252(a)(2)(D) in two ways: (1) by advancing a statutory-construction argument, or (2) by disputing 'the application of a legal standard to undisputed or established facts.'" *Galeano-Romero v. Barr*, 968 F.3d 1176, 1182 (10th Cir. 2020)

6

(quoting *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068-69 (2020) (brackets and citation omitted)). Petitioner does not raise a statutory-construction argument challenging the BIA's interpretation of § 1229b. Nor does he raise a question of law disputing the application of a legal standard to the facts of his case. Although he contends his evidence satisfies the hardship standard, "[a] petition for review does not raise a question of law by disputing the [BIA]'s appraisal of the degree of hardship likely to his [qualifying relatives]," *id.* As we recently explained:

> That the Board has announced a standard to aid its hardship determination does not create jurisdiction for us to review the Board's *application* of that standard, provided that the Board acknowledges its standard and exercises its discretion within the bounds of its precedents' cabining of such discretion. Once the Board does that, the application of that standard is discretionary—*i.e.*, the determination of whether the requisite hardship exists is discretionary because there is no algorithm for determining when a hardship is exceptional and extremely unusual.

*Id.* at 1183 (brackets and internal quotation marks omitted).

Petitioner does not contest the standard applied by the BIA or argue that the BIA exceeded the scope of its discretion. Instead, he contends the evidence, "taken in the aggregate," demonstrates his children will suffer exceptional and extremely unusual hardship. Pet'r Br. at 7. This argument challenges the BIA's appraisal of the hardship facing his children, which is a discretionary determination we lack jurisdiction to review.

Apart from his broad discretionary challenge, Petitioner contends the BIA did not consider the cumulative effect of the evidence of hardship facing his children. He also contends the BIA disregarded Ms. Arroyo's testimony, and failed to account for the negative impact his removal would have on his children's academic success, particularly

7

because they are gifted students. Although he does not specify a jurisdictional basis to review these contentions, he alludes to our jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to consider constitutional claims. *See also Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009) ("[W]holesale failure to consider evidence implicates due process." (internal quotation marks omitted)).

Petitioner's arguments are unavailing. First, the BIA expressly stated that the IJ "correctly examined the evidence, weighed the relevant factors, and correctly found *those factors, cumulatively, did not rise to the required level of hardship*." Admin. R. at 4 (emphasis added). Second, the IJ fully evaluated Ms. Arroyo's testimony, and the BIA cited it in considering A.G.'s depression. And third, the BIA noted Petitioner's argument that the IJ overlooked the negative impact that removal would have on his "academically gifted" children, *id.* at 3, but it concluded that they had no special educational needs and, even with the other evidence, Petitioner failed to show exceptional and extremely unusual hardship. Thus, the BIA considered the evidence in the aggregate. To the extent Petitioner merely disputes the adequacy of the BIA's analysis, his argument "is just a quarrel about the level of detail required in the BIA's analysis, not a colorable due process claim," *Alzainati*, 568 F.3d at 851.

### III

The petition for review is dismissed in part and denied in part.

Entered for the Court

Harris L Hartz
Circuit Judge