**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RENIERY ADALBERTO GALEANO-
ROMERO, a/k/a Reniery Galeano-Romero,
a/k/a Reniery Adalberto Galeano Romero,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9585

_____

**Appeal from the Board of Immigration Appeals**
**(Petition for Review)**
_____

Submitted on the briefs:[*]

Alison Berry of the Law Office of Alison Berry, Esq., White Plains, New York, for
Petitioner.

Joseph H. Hunt, Assistant Attorney General; John S. Hogan, Assistant Director, and
Rebecca Hoffberg Phillips, Trial Attorney, Office of Immigration Litigation, Civil
Division, Department of Justice, Washington, D.C., for Respondent.
_____

Before **HOLMES**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument.

**PHILLIPS**, Circuit Judge.

_____

Reniery Adalberto Galeano-Romero seeks review of a Board of Immigration Appeals decision that denied both his application for cancellation of removal under 8 U.S.C. § 1229b(b)(1) and his motion to remand and reopen his case to raise a Convention Against Torture (CAT) claim. The Board acknowledged that his removal would result in hardship to his citizen spouse but concluded that the hardship would not be "exceptional and extremely unusual," leaving him ineligible for cancellation of removal. § 1229b(b)(1)(D). And the Board denied his motion to remand to present his CAT claim to an Immigration Judge (IJ), after noting that Galeano-Romero had referenced no previously unavailable and material evidence, a prerequisite to any such motion to reopen. 8 C.F.R. § 1003.2(c)(1). This timely petition for review followed, in which Galeano-Romero challenges both decisions.

We lack jurisdiction under 8 U.S.C. § 1252(a)(2)(B) to consider his challenge to the Board's discretionary hardship decision, so we dismiss this portion of his petition for lack of jurisdiction.[1] Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the portion of his petition pertaining to his motion to remand.

_____

[1] The government filed a motion to dismiss Galeano-Romero's cancellation-of-removal claim on this basis, which we grant.

2

**BACKGROUND**

Since March 2001, when he arrived as a seven-year-old child from Honduras, Galeano-Romero has unlawfully resided in the United States.[2] On November 22, 2016, after he was arrested and indicted in Texas for assault with a deadly weapon, the Department of Homeland Security served him with a notice to appear and took him into custody. On April 19, 2017, Galeano-Romero appeared with counsel before an IJ and conceded removability based on his unlawful presence in the country.[3] He then informed the IJ that he intended to seek cancellation of removal under § 1229b(b)(1). But his eligibility for relief under this provision depended in part on the outcome of his pending criminal case. *See* § 1229b(b)(1)(C) (disqualifying aliens from cancellation of removal if

---

[2] On August 24, 2015, Galeano-Romero received Deferred Action for Childhood Arrivals (DACA) status, effective through August 23, 2017, subject to certain conditions. But DACA does not convey lawful status; it simply defers removal. *Consideration of Deferred Action for Childhood Arrivals (DACA)*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/archive/consideration -deferred-action-childhood-arrivals-daca (last updated Feb. 14, 2018); *see also Rauda-Castillo v. Lynch*, 616 F. App'x 385, 388 (10th Cir. 2015) (unpublished) (noting that DACA "does not provide lawful status" (internal quotation marks and citation omitted)).

[3] On appeal, Galeano-Romero asserts for the first time that the notice to appear's failure to list a time or place for his removal hearing deprived the IJ of jurisdiction over his case, rendering his removal order invalid. But because he failed to present this argument to the IJ or Board, it is unexhausted, and we lack jurisdiction to consider it. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."); *Robles-Garcia v. Barr*, 944 F.3d 1280, 1282–84 (10th Cir. 2019) (holding that an alien's failure to raise this defect—no time or place provided in a notice to appear—to the IJ or Board rendered it "unexhausted," leaving our court without jurisdiction to hear it). In any event, our court has concluded that such a "defect" in the notice to appear does not even deprive the IJ of jurisdiction. *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1015, 1018 (10th Cir. 2019).

already "convicted of" an aggravated felony (citing 8 U.S.C. § 1227(a)(2))). So, with the government's consent, the IJ paused the removal proceedings to await the result of the state criminal case. On May 30, 2017, federal authorities turned over Galeano-Romero to Texas authorities for his criminal trial, and on June 7, 2017, the agency administratively closed the removal proceedings. Over a year later, on December 7, 2018, a Texas jury acquitted him of the criminal charge.

On January 8, 2019, the IJ re-calendared Galeano-Romero's removal proceedings. At a January 16, 2019 hearing, Galeano-Romero informed the IJ that his wife would be filing a "Form I–130"—a method by which an alien's relative petitions to change the alien's legal status—based on his 2017 marriage to long-term girlfriend, Amanda Martinez, an American citizen. R. at 674–75. But the IJ cut this short, advising that she lacked authority to adjust the status of an alien unlawfully present in the United States.[4] So, with this path closed, Galeano-Romero renewed his request for "cancellation of removal[.]" R. at 677. On April 3, 2019, he filed an application for cancellation of removal, which the IJ considered during an April 18, 2019 hearing.

An IJ may cancel an alien's removal and grant lawful status if, in addition to three other requirements,[5] the alien demonstrates "that removal would result in exceptional and

---

[4] Galeano-Romero informs us that this petition was granted in December 2019. The consequences of this are not at issue in this appeal.

[5] To meet the three other requirements, a petitioner must show a ten-year continuous presence in the United States, "good moral character," and an absence of certain listed criminal convictions. *See* 8 U.S.C. § 1229b(b)(1)(A)–(C). Here, the Board hinged its conclusion on the hardship determination alone, so we do not consider these three other requirements. *See Uanreroro v. Gonzales*, 443 F.3d 1197,

extremely unusual hardship to the alien's [U.S. citizen] spouse[.]" 8 U.S.C. § 1229b(b)(1)(D). As evidence in support of this needed hardship, Galeano-Romero offered testimony from himself, his wife, and his mother-in-law. The testimony highlighted his wife's clinical depression, which coincided with his arrest and lengthy detention. Based on this testimony, and other evidence presented, the IJ agreed that Galeano-Romero's wife would suffer hardship from his removal but concluded that the hardship would not be "exceptional and extremely unusual[.]" R. at 538.

Galeano-Romero appealed this decision to the Board. And while the appeal was pending, he also filed with the Board a "Motion to Reopen and Remand Case to [the IJ] to Consider Respondent's Application for Withholding of Removal Under the United Nations Convention Against Torture." R. at 22 (emphasis and some capitalization removed). Responding to the first argument, the Board (in a single-member decision that applied de novo review) affirmed the IJ's conclusion that his spouse's hardship would not be "exceptional and extremely unusual." It concluded that while his spouse "will suffer some hardship upon her husband's removal to Honduras, such hardship is unfortunately a common occurrence when an alien is removed." R. at 4. And because "an applicant for cancellation of removal . . . must demonstrate hardship to . . . qualifying relatives that is

1204 (10th Cir. 2006) ("[I]n deference to the agency's own procedures, we will not affirm on grounds raised in the IJ decision unless they are relied upon by the [Board] in its affirmance." (citations omitted)); *Reyes-Vargas v. Barr*, 958 F.3d 1295, 1300 (10th Cir. 2020) ("Both the IJ and the Board rendered a decision in this case, but because a single member of the Board affirmed the IJ's decision in a brief order, we review the Board's opinion rather than the decision of the IJ." (internal quotation marks, alterations, and citation omitted)). Thus, the IJ's conclusion that Galeano-Romero lacked "good moral character" is not before us in this appeal.

5

'substantially different from, or beyond, that which would normally be expected' from the removal of a close family member," Galeano-Romero had not shown the requisite hardship to his spouse. *Id.* (quoting *Andazola-Rivas*, 23 I. & N. Dec. 319, 321 (B.I.A. 2002) (en banc)). As for the second argument, the Board denied his motion to remand on the CAT issue for three independent reasons: (1) waiver, (2) failure to satisfy regulatory prerequisites for a motion to remand, and (3) failure to establish a prima facie case for relief under CAT.

## DISCUSSION

### I.     Our Jurisdiction: Cancellation of Removal

We begin by determining "whether we have jurisdiction to review the issues raised by petitioner in his petition." *Arambula-Medina v. Holder*, 572 F.3d 824, 827–28 (10th Cir. 2009) (citation omitted). With the Immigration and Nationality Act (INA), Congress has decided that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b[.]" 8 U.S.C. § 1252(a)(2)(B)(i). Our court reads this provision as denying jurisdiction to review "the discretionary aspects of a decision concerning cancellation of removal" under § 1229b(b)(1). *Arambula-Medina*, 572 F.3d at 828 (citing *Sabido Valdivia v. Gonzales*, 423 F.3d 1144, 1148–49 (10th Cir. 2005)). Such "discretionary aspects" include "any underlying factual determinations" as well as "the determination of whether the petitioner's removal from the United States 'would result in exceptional and extremely unusual hardship' to a qualifying relative under 8 U.S.C. § 1229b(b)(1)(D)." *Id.* (citation omitted); *see also Alzainati v. Holder*, 568 F.3d 844, 850 (10th Cir. 2009) ("If the [Board] decides, in an

6

exercise of agency discretion, [that] an alien has not produced sufficient evidence to warrant a finding of exceptional and extremely unusual hardship, we cannot review that decision.").

In the same section of the INA, Congress has enacted a "Limited Review Provision[.]" *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020) (discussing 8 U.S.C. § 1252(a)(2)(D)). This provision provides courts jurisdiction to review "constitutional claims" and "questions of law," including those that arise in the circumstances specified at § 1229b(b)(1). *See* § 1252(a)(2)(D); § 1252(a)(2)(B)(i) ("[E]xcept as provided in subparagraph (D), . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b. . . ."); *Arambula-Medina*, 572 F.3d at 828. So, because this appeal concerns the Board's denial of Galeano-Romero's application for cancellation of removal under § 1229b(b)(1), we lack jurisdiction unless Galeano-Romero's petition for review raises a question of law or a constitutional claim. He attempts to raise both. First, he attempts to raise a question of law under § 1252(a)(2)(D) by asserting that the Board misapplied its own precedent regarding what qualifies as "exceptional and extremely unusual hardship." Second, he attempts to raise a constitutional issue by contending that he was "denied a fundamentally fair deportation proceeding under the Due Process Clause of the Fifth Amendment[.]" Br. for Pet'r at 19 (emphasis removed). We consider each in turn.

## A.     Questions of Law

A petitioner can raise a "question[] of law" under § 1252(a)(2)(D) in two ways: (1) by advancing a statutory-construction argument, *Shepherd v. Holder*, 678 F.3d 1171,

7

1179 (10th Cir. 2012), or (2) by disputing "the application of a legal standard to undisputed or established facts,"[6] *Guerrero-Lasprilla*, 140 S. Ct. at 1068–69. Here, Galeano-Romero relies on the second method to invoke our jurisdiction.[7] He argues that, after *Guerrero-Lasprilla*, his challenge to "the Board's misapplication of the legal standard [for exceptional and extremely unusual hardship] to the settled facts of this case" gives rise to a question of law under § 1252(a)(2)(D), overcoming § 1252(a)(2)(B)'s jurisdictional bar. Suppl. Br. for Pet'r at 6 (emphasis and some capitalization removed). We disagree.

A petition for review does not raise a question of law by disputing the Board's appraisal of the degree of hardship likely to his wife.[8] We lack jurisdiction to review the

---

[6] In *Shepherd*, we ruled that "questions of law" as used in § 1252(a)(2)(D) extend to only "issues regarding statutory construction." 678 F.3d at 1179 (internal quotation marks omitted) (quoting *Diallo v. Gonzales*, 447 F.3d 1274, 1281–82 (10th Cir. 2006)). *Guerrero-Lasprilla* says otherwise.

We disagree with Galeano-Romero that he raised a question of statutory interpretation. He does not dispute the Board's reading of the statute, instead basing his challenge on the Board's application of its precedent.

[7] Though Galeano-Romero did not raise this argument in his opening brief— which he filed before the Court decided *Guerrero-Lasprilla*—"we may consider changes in governing law arising during the pendency of the appeal." *Cf. Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1222 (10th Cir. 1996) (citation omitted). For this reason, we ordered supplemental briefing to address whether *Guerrero-Lasprilla* applies in this case.

[8] Galeano-Romero raises two issues with the Board's decision. First, he contends that the Board erred by finding that his wife's mother would help with his wife's depression, thus improperly discounting the hardship his wife would suffer upon his removal. But that argument merely takes issue with how the Board weighed the evidence before it. He presents no argument that the Board ignored its precedent in reaching that conclusion. Second, he contends that the Board erred by comparing

8

Board's discretionary decision, based on the facts of the case, whether an alien's spouse will suffer an exceptional and extremely unusual hardship. *See, e.g.*, *Arambula-Medina*, 572 F.3d at 828 (concluding that "the determination of whether the petitioner's removal from the United States 'would result in exceptional and extremely unusual hardship' to a qualifying relative" is discretionary (citations omitted)); *Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003); *see also Nastase v. Barr*, 964 F.3d 313, 320 (5th Cir. 2020) (concluding that prior cases involving § 1252(a)(2)(B)'s jurisdictional bar hinged "on the simple observation that the Attorney General's power to grant" relief was "purely discretionary," meaning that "*Guerrero-Lasprilla* does not disturb that precedent" (citation omitted)).

To see why such a challenge does not raise a § 1252(a)(2)(D) "question[] of law," we examine that subsection as part of the statutory scheme. *See, e.g.*, *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (plurality opinion) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007))). With § 1252(a)(2)(B), Congress denies courts "jurisdiction to review . . . any judgment

---

the hardship his spouse would suffer upon his removal to that suffered by military families upon a family member's deployment. This argument misunderstands the Board's conclusion, which did not rely on a comparison to military families. But even if it had, he points to no Board precedent that bars such a comparison. Moreover, this argument boils down to a contention that the Board improperly weighed the suffering his wife would suffer upon his removal. But the weighing of evidence in determining whether hardship exists is within the Board's discretion. *Alzainati*, 568 F.3d at 850.

9

regarding the granting of relief under section . . . 1229b," "except as provided in subparagraph (D)" (which, as noted, provides for jurisdiction over "questions of law"). Subsection (D) can provide jurisdiction beyond what subsection (B) otherwise would exclude. In charting our jurisdiction, we must recognize that these two subsections interconnect and are meant to work harmoniously. We decline to interpret subsection (D)'s "questions of law" provision so expansively that subsection (B) becomes superfluous, a nullity. *See Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018) ("[T]he canon against surplusage indicates that we generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning." (internal quotation marks omitted) (quoting *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017))).

With § 1252(a)(2)(B), Congress has directed that matters left to the Board's discretion are beyond our review. § 1252(a)(2)(B) (prohibiting jurisdiction over "[d]enials of discretionary relief"). As discussed, such discretionary decisions include the cancellation-of-removal hardship decision. *See, e.g.*, *Arambula-Medina*, 572 F.3d at 828; *Morales Ventura*, 348 F.3d at 1262. That the Board has announced a standard to aid its hardship determination does not create jurisdiction for us to review the Board's *application* of that standard, provided that the Board acknowledges its standard and exercises its discretion within the bounds of its precedents' cabining of such discretion. Once the Board does that, the application of that standard is discretionary—*i.e.*, the determination of whether the requisite hardship exists is discretionary because "[t]here is no algorithm for determining when a hardship is 'exceptional and extremely unusual.'"

10

*Morales Ventura*, 348 F.3d at 1262; *see also Arambula-Medina*, 572 F.3d at 828. If we concluded otherwise, our jurisdiction would extend to reviewing how the Board exercises its discretion, writing subsection (B) out of the statute. Thus, the Board's discretionary determinations, such as the one made here, do not raise "questions of law" for purposes of § 1252(a)(2)(D), even if framed as a challenge to the application of a legal standard to established facts under *Guerrero-Lasprilla*.[9]

But we do have jurisdiction to hear some challenges to some Board decisions concerning cancellations of removal—those not asking us to reweigh evidence and substitute our view in place of the Board's discretionary decision. As Congress has instructed in § 1252(a)(2)(D), we retain jurisdiction over questions of law that arise from the Board's hardship determination. As a first example, in *Saldivar Colon v. Barr*, 805 F. App'x 595 (10th Cir. 2020) (unpublished), we had jurisdiction to review a petitioner's claim that the Board had "*required* that [the petitioner] have more than one child and fewer assets to qualify for [hardship] relief." *Id.* at 599. Because the Board lacked discretion to impose additional qualifications for hardship beyond those set by § 1229b(b)(1)(D), we could review, as a question of law, whether the Board did so. *Id.* at 598–99 (noting that § 1229b(b)(1)(D) requires one qualifying relative). As a second

---

[9] Unlike in Galeano-Romero's case, the Court in *Guerrero-Lasprilla* considered the courts' ability to review the Board's denial of equitable tolling based on its finding that petitioners had not proceeded with due diligence. 140 S. Ct. at 1067–68. Moreover, *Guerrero-Lasprilla* concerned § 1252(a)(2)(C)—not § 1252(a)(2)(B). In that setting, the Court had no reason to address the particular dynamic involved here—the interaction between one subsection that prevents review over certain Board decisions and another subsection that allows for judicial review over questions of law or constitutional issues.

example, we have jurisdiction to review a petitioner's claim that the Board-adopted hardship standard rests on an unreasonable interpretation of § 1229b(b)(1)(D)'s "exceptional and extremely unusual hardship" condition. *See Ocampo-Guaderrama v. Holder*, 501 F. App'x 795, 799 (10th Cir. 2012) (unpublished) (upholding the Board's interpretation of § 1229b(b)(1)(D)'s "exceptional and extremely unusual hardship" provision). Obviously, the Board would lack discretion to contravene statutory requirements. As a third example, we have jurisdiction to review a claim that the Board departed from its own adopted hardship standard, by ignoring it or favoring some other inapplicable standard. *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008); *see also* 8 C.F.R. § 1003.1(g) (requiring that the Board follow its precedent). In such instance, the Board will have cabined its discretion, such that it would lack discretion to depart from or ignore its precedent. And as a fourth example, we have jurisdiction over a claim that the Board applied the incorrect standard of review to an IJ's factual determinations. *Kassim v. Barr*, 954 F.3d 1138, 1140 (8th Cir. 2020). The Board does not have the discretion to apply the incorrect legal standard in that instance. But Galeano-Romero raises no such issues. He merely argues that this court should reach a different result than the Board did. We lack jurisdiction to consider such a claim.

For the foregoing reasons, under § 1252(a)(2)(B), we lack jurisdiction over Galeano-Romero's claim that the Board misapplied its hardship precedent in weighing the level of hardship his wife would face upon his removal.

12

## B.    Constitutional Claims

We turn now to Galeano-Romero's attempt to invoke our jurisdiction by raising a constitutional claim. We retain jurisdiction over "colorable" constitutional claims for purposes of § 1252(a)(2)(D). *See Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007). "An alien does not present a colorable constitutional claim capable of avoiding the jurisdictional bar by arguing that the evidence was incorrectly weighed, insufficiently considered, or supports a different outcome." *See id.* (citation omitted). Here, Galeano-Romero contends that the IJ and Board violated his Fifth Amendment due-process right by denying him a fundamentally fair hearing. So to invoke our jurisdiction, he must present a "colorable" due-process claim.

"[T]o make out a claim for a violation of due process, a claimant must have a liberty or property interest in the outcome of the proceedings." *Arambula-Medina*, 572 F.3d at 828 (internal quotation marks omitted) (quoting *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004)). And an alien has no "liberty or property interest" in cancellation of removal. *Alzainati*, 568 F.3d at 851 (internal quotation marks omitted) (quoting *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1020 (10th Cir. 2007)). Thus, Galeano-Romero can invoke only "procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation marks omitted) (quoting *Schroeck v. Gonzales*, 429 F.3d 947, 952 (10th Cir. 2005)); *see also Arambula-Medina*, 572 F.3d at 828 ("Because aliens do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights . . . ." (citation omitted)); *Alzainati*, 568 F.3d at 851 (concluding that our

13

jurisdiction extends to a claim that an IJ engaged in a "wholesale failure to consider evidence" (internal quotation marks and citation omitted)).

Here, Galeano-Romero offers several bases in support of his constitutional claim, most of which criticize the IJ's and Board's analyses in concluding that his spouse would not suffer "exceptional and extremely unusual hardship." *See* Br. for Pet'r at 23–24. For example, addressing his spouse's need for his financial and emotional support, he argues that the IJ overvalued the support available from her parents and undervalued the support available from him. He also argues that the IJ and Board "failed to consider all the relevant factors in [his] case in the aggregate as the law required." *Id.* at 25 (bold removed). And he contends that this failure—given how the overwhelming evidence as a whole merited a "favorable exercise of discretion"—violated his due-process rights. *Id.* at 26. But each of these arguments merely contends that the Board reached the wrong conclusion. And such arguments "that the evidence was incorrectly weighed, insufficiently considered, or supports a different outcome" do not state a colorable constitutional claim. *Kechkar*, 500 F.3d at 1084 (citation omitted).

In addition to disputing the Board's conclusion, he contends that the IJ's "misapplication of the law permeated the entire removal proceeding" such that "it deprived [him] of the fair hearing to which he was entitled." Br. for Pet'r at 22. He contends that the IJ erred by admitting evidence from his criminal trial in considering whether he possessed good moral character. He argues that examples such as this demonstrate the IJ was not "an impartial arbiter." *Id.* at 23. But the character issue is not before us. *See supra* note 5. And he draws no link between the IJ's considering this

14

evidence and the IJ's and Board's reasoned decisions explaining why no "exceptional and extremely unusual hardship" existed (in fact, the IJ even noted that the evidence from his criminal trial did not factor into her decision on his character). Merely asserting that the IJ was not an impartial arbiter based on an unfavorable result does not present a colorable due-process claim.

In fact, the record demonstrates that Galeano-Romero was afforded procedural due process. He was given the opportunity to present evidence to the IJ (and did so by testifying, along with his spouse and mother-in-law), and his attorney made "arguments in favor of eligibility for cancellation of removal." *See Torres de la Cruz*, 483 F.3d at 1020–21 & n.6. Given this, Galeano-Romero has failed to establish a colorable constitutional claim, and we lack jurisdiction to consider his arguments further.

### C.    Conclusion

In sum, Galeano-Romero has failed to raise either a "question[] of law" or a "constitutional claim[]" under § 1252(a)(2)(D). Accordingly, we lack jurisdiction to consider his claim regarding cancellation of removal and dismiss that claim for lack of jurisdiction under § 1252(a)(2)(B).

## II.    Motion to Remand: Convention Against Torture

Galeano-Romero also appeals the Board's denial of his motion to remand to the IJ for it to consider a CAT claim.[10] We review the Board's decision "for an abuse of

---

[10] We have jurisdiction to consider this claim under 8 U.S.C. § 1252(a)(1). Galeano-Romero filed a Federal Rule of Appellate Procedure 28(j) letter with the court, informing us that the Supreme Court's decision in *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), allows "judicial review" of his CAT claim. Pet'r's June 12, 2020 Rule

15

discretion." *See Witjaksono v. Holder*, 573 F.3d 968, 978–79 (10th Cir. 2009). The Board "abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004) (internal quotation marks omitted) (quoting *Gurung v. Ashcroft*, 371 F.3d 718, 720–21 (10th Cir. 2004)); *see also Witjaksono*, 573 F.3d at 978–79 & n.10.

The "same legal standard [applies] to motions to reopen and motions to remand." *Witjaksono*, 573 F.3d at 979 n.10 (citations omitted); *see also* 8 C.F.R. § 1003.2(c)(4) ("A motion to reopen a decision rendered by an [IJ] . . . that is filed while an appeal is pending before the Board, may be deemed a motion to remand for further proceedings before the [IJ] . . . from whose decision the appeal was taken."); *L-V-K-*, 22 I. & N. Dec. 976, 978 (B.I.A. 1999) ("A motion to reopen that is filed during the pendency of an appeal may be styled as a motion to remand. In substance, however, it remains a motion to reopen." (citation omitted)). And "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing[.]" 8 C.F.R. § 1003.2(c)(1); *see also INS v. Abudu*, 485 U.S. 94, 104–05 (1988) (noting that a previous version of this regulation allowed the Board to deny a motion to reopen when the alien failed to "introduce[] previously unavailable, material evidence"

28(j) Letter at 1, ECF No. 10747269. But, as the government noted in response, we have jurisdiction, so *Nasrallah* "is completely irrelevant." Gov't's June 15, 2020 Rule 28(j) Resp. Letter at 1, ECF No. 10747411.

(citation omitted)); *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003) ("The B[oard] may deny a motion to reopen . . . [when] the movant has not introduced previously unavailable, material evidence . . . ." (internal quotation marks and citation omitted)). In this case, the Board dismissed Galeano-Romero's appeal for failing to satisfy this requirement.[11] R. at 6 ("[Galeano-Romero] has not demonstrated that the evidence sought to be offered is new, was not available and could not have been presented at the former hearing.").

The Board did not abuse its discretion in reaching this conclusion. In fact, the Board reached the only conclusion it could, because nowhere in Galeano-Romero's submissions to the Board did he explain how he satisfies § 1003.2(c)(1).[12] Instead, he contended only that his motion to remand was proper because his CAT claim "was not previously considered by an [IJ]." R. at 12. But his failure to raise the issue previously does not justify a motion to reopen. Rather, such a motion is proper only if new, material information that "could not have been discovered or presented at the former hearing" or on documents that were available but remained unsubmitted "because of counsel's

---

[11] The Board also denied his motion to remand on two other, alternative grounds: (1) waiver and (2) failure to demonstrate a prima facie case for relief. But because Galeano-Romero must demonstrate that the Board abused its discretion on all three grounds, his failure to allege error in the Board's § 1003.2(c)(1) conclusion means that we need not consider the two alternative grounds provided by the Board.

[12] In his opening brief, Galeano-Romero again fails to explain how his motion satisfies § 1003.2(c)(1)'s requirement that "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing[.]" Instead, he attacks the Board's decision with respect to his prima facie eligibility for relief.

17

ineffectiveness." *See Mena-Flores v. Holder*, 776 F.3d 1152, 1168 (10th Cir. 2015) (internal quotation marks and citations omitted). And because he failed to allege that either situation applied, the Board correctly denied his motion. Accordingly, we deny his petition for review with respect to his motion to remand for relief under CAT.

## CONCLUSION

We dismiss this petition for review in part for lack of jurisdiction to review the Board's discretionary cancellation-of-removal decision, and we deny the petition in part with respect to the motion to remand.[13]

_____

[13] As to the government's motion to dismiss, we deny as moot the motion to dismiss the CAT claim and, as mentioned *supra* note 1, grant the motion to dismiss the cancellation-of-removal claim for lack of jurisdiction.