FILED
United States Court of Appeals
Tenth Circuit

January 26, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CARLOS MANUEL RODRIGUEZ-
ORTIZ, a/k/a Carlos Rodriguez-Cisneros,

     Petitioner,

v.

ROBERT M. WILKINSON, Acting United
States Attorney General,[*]

     Respondent.

No. 20-9545
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **LUCERO**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Carlos Manuel Rodriguez-Ortiz petitions for review of a Board of Immigration

Appeals (Board) order denying his motion to reopen his removal proceedings. We

dismiss the petition for review for lack of jurisdiction.

---

[*] On January 20, 2021, Robert M. Wilkinson became Acting Attorney General
of the United States. Consequently, his name has been substituted for William P.
Barr as Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.  Background

Petitioner, a native and citizen of Mexico, entered the United States illegally in 1998.  In 2009, the Department of Homeland Security initiated removal proceedings, contending he was removable as an alien who was present in the United States without admission or parole.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Through counsel, Petitioner admitted the Department's factual allegations, conceded removability, and sought relief in the form of cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1).  To obtain relief, he needed to demonstrate that he had "been a person of good moral character" during the ten-year period before his application, and that his "removal would result in exceptional and extremely unusual hardship" to his wife and three children, all of whom were United States citizens.  *See id.* § 1229b(b)(1)(B), (D).

The Immigration Judge (IJ) denied the application, finding Petitioner did not meet either requirement.  With respect to good moral character, the IJ outlined Petitioner's many contacts with law enforcement in the United States, including two convictions for driving under the influence and a 2012 domestic violence conviction.  The IJ acknowledged that most of the incidents occurred outside the relevant ten-year period and that Petitioner had "stayed out of trouble since 2012."  R. at 170.  But the IJ noted that Petitioner had been in jail fourteen weeks during the relevant period, and concluded he could not demonstrate the requisite good moral character because

of the "seriousness" of the domestic violence and DUI convictions, "the number of offenses," and his "repeated disregard for the law." *Id.*

Turning to family hardship, the IJ found Petitioner's four qualifying family members would stay in the United States upon his removal. The IJ acknowledged Petitioner's evidence about the emotional, medical, and educational challenges each of his daughters faced. But the IJ found that despite their challenges the children were "generally healthy" and there was no evidence "any medical or educational problems []would be significantly exacerbated" by Petitioner's removal. *Id.* at 171. The IJ also acknowledged that the loss of Petitioner's income would cause economic hardship for the whole family, but noted that his wife still worked full time and held that "economic hardship to one's qualifying relatives due to reduced income does not rise to the level of exceptional and extremely unusual hardship." *Id.* at 172. The IJ further found nearby relatives would "help care for" the children and "provide a supportive and stable environment in" Petitioner's absence. *Id.* at 171. After "consider[ing] all evidence whether expressly referred to in [the] decision or not," *id.* at 167, and weighing the evidence "both individually and cumulatively," *id.* at 170, the IJ concluded that while Petitioner's removal would "be difficult for his wife and children," their hardship would not be "substantially different from that typically experienced when [an alien] with close family members" is removed, *id.* at 172 (emphasis omitted). *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001) (explaining that to establish "exceptional and extremely unusual hardship" an alien must show "his qualifying relatives would suffer hardship that is substantially

3

different from, or beyond, that which would normally be expected from the deportation of an alien with close family members" in the United States).

On appeal, the Board found the IJ did not clearly err in finding that Petitioner's daughters are "generally healthy, even if some evidence may support a contrary finding." R. at 106 (internal quotation marks omitted). The Board agreed with the IJ's conclusion that the support of nearby relatives "mitigates some of the hardship" Petitioner's removal might cause. *Id.* at 107. It also agreed with the IJ that the loss of Petitioner's income did not meet the statutory standard because reduced income is a "common result" of a family member's removal. *Id.* (internal quotation marks omitted). And it rejected Petitioner's contentions that the IJ "overlooked a portion of the record" and failed to analyze the cumulative effect of the hardship on his qualifying relatives. *Id.* In so doing, the Board accepted the IJ's statement that he considered all of the evidence both individually and cumulatively, and explained that an IJ is not required to "discuss every single piece of evidence in the record . . . as long [as] the decision reflects meaningful consideration of the relevant substantial evidence." *Id.* Because it agreed with the IJ's ultimate determination that Petitioner's hardship evidence was insufficient to establish eligibility for cancellation of removal, the Board denied Petitioner's application on that basis alone and declined to address his challenges to the IJ's holding that he also failed to establish the requisite good moral character.

About a month later, Petitioner moved to reopen his removal proceedings, presenting what he characterized as new hardship evidence, including information

4

about his wife's physical and mental health issues, his oldest daughter's emotional and educational challenges, and his middle daughter's drug use and other struggles stemming from problems with her mother and her mother's boyfriend. He asked the Board to reopen the proceedings and remand to the IJ for reconsideration of his application for cancellation based on his new evidence.

The Board denied the motion for two reasons. First, it found some of the evidence Petitioner submitted in support of reopening was not new and previously unavailable, and that regardless of whether it was new, reopening was not warranted because the evidence was insufficient "to overcome" the IJ's factual findings and still did not demonstrate the requisite level of family hardship. *Id.* at 4. Accordingly, the Board concluded Petitioner had "not shown that the new evidence would likely change the result of his case." *Id.* at 5; *see Maatougui v. Holder*, 738 F.3d 1230, 1240 (10th Cir. 2013) (explaining that to merit reopening, an alien must present new and previously unavailable facts demonstrating that "if proceedings before the IJ were reopened . . ., the new evidence offered would likely change the result in the case" (brackets and internal quotation marks omitted)). Second, the Board concluded that even if the new evidence were sufficient to establish extreme and unusual hardship, reopening was not warranted because the motion did not address the IJ's determination that Petitioner was also ineligible for cancellation based on his failure to meet the good moral character requirement.

## II. Discussion

Petitioner claims the Board erred by concluding his new hardship evidence did not warrant reopening. We conclude we lack jurisdiction to review his challenges to the Board's hardship determination.

We do not have jurisdiction to review the BIA's discretionary determinations regarding applications for cancellation of removal. *See* 8 U.S.C. § 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b"). Whether an alien has demonstrated the exceptional and extremely unusual hardship required for cancellation of removal by § 1229b(b)(1)(D) is one such discretionary determination beyond our review. *Alzainati v. Holder*, 568 F.3d 844, 848 (10th Cir. 2009).

Like Petitioner, the alien in *Alzainati* appealed the BIA's denial of his motion to reopen based on new evidence supporting his claim of exceptional and extremely unusual hardship. *See* 568 F.3d at 847. Noting that we would not have jurisdiction to review the BIA's hardship ruling if it had been challenged on direct review, we considered whether an alien can, by appealing the denial of a motion to reopen, "indirectly obtain judicial review of a discretionary ruling that is not directly reviewable." *Id.* at 848. We explained that "a proper jurisdictional analysis must consider the basis for the denial of the motion to reopen," because some grounds for denial of reopening would not implicate the jurisdictional bar on judicial review of discretionary decisions. *See id.* at 849-50. But "[i]f the [Board] decides, in an exercise of agency discretion, an alien has not produced sufficient evidence to

6

warrant a finding of exceptional and extremely unusual hardship, we cannot review that decision." *Id.* at 850. Thus, if "[t]he [Board]'s denial of the motion to reopen was, like the underlying order of removal, based on the merits of the hardship issue, which is a discretionary determination," the jurisdictional bar precludes our review unless the alien raises a constitutional claim or a question of law. *Id.*; *see* 8 U.S.C. § 1252(a)(2)(D).

"An alien does not present a colorable constitutional claim capable of avoiding the jurisdictional bar by arguing that the evidence was incorrectly weighed, insufficiently considered, or supports a different outcome." *Galeano-Romero v. Barr*, 968 F.3d 1176, 1184-85 (10th Cir. 2020) (internal quotation marks omitted). And "[a] petition for review does not raise a question of law by disputing the [BIA]'s appraisal of the degree of hardship likely to [qualifying relatives]," *id.* at 1182, or by criticizing "how the Board exercise[d] its discretion" even if such criticisms are "framed as a challenge to the application of a legal standard to established fact," *id.* at 1184.

Petitioner contends the Board erred in finding some of his evidence was not new or previously unavailable, failed to consider all of the hardship evidence he submitted in support of reopening, and did not meaningfully analyze or improperly weighed evidence he claims meets the hardship standard and establishes his eligibility for cancellation. But these complaints about the adequacy of the Board's analysis and its weighing of the evidence are exactly the types of merits-based challenges we lack jurisdiction to review. *See Alzainati*, 568 F.3d at 850. And his

7

contentions that the Board's decision is "manifestly contrary to the law," Aplt. Opening Br. at 8, and that the Board violated his right to due process by denying reopening without remanding to the IJ for "further development of the record for purposes of establishing eligibility for the relief sought," *id.* at 6, 11, do not raise either a question of law or a constitutional claim. They are nothing more than another way of contending that the Board weighed the evidence incorrectly and made the wrong discretionary decision, and we lack jurisdiction to review such claims. *See Galeano-Romero*, 968 F.3d at 1185 (rejecting attempt to couch claims that Board "failed to consider all the relevant factors . . . in the aggregate" and "overvalued" and "undervalued" evidence as constitutional claims); *Alzainati*, 568 F.3d at 851 (concluding argument that Board violated due process by not addressing certain evidence in its order was "just a quarrel about the level of detail required in the [Board]'s analysis, not a colorable due process claim").

Because the Board's denial of Petitioner's motion to reopen hinged on its hardship determination, and because we lack jurisdiction to review that determination, we need not address the parties' arguments regarding the Board's failure to review the IJ's conclusion that he did not show the requisite good moral character. *See Galeano-Romero* 968 F.3d at 1180 n.5 (declining to consider good-moral-character arguments where Board's cancellation decision hinged on unreviewable hardship determination).

8

### III.   Conclusion

Because we lack jurisdiction to review Petitioner's claims, we dismiss the petition for review.

Entered for the Court


Gregory A. Phillips
Circuit Judge