FILED
United States Court of Appeals
Tenth Circuit

June 14, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HECTOR SANTILLAN-BORRAYO, a/k/a
Hector M. Santillan-Borrayo, a/k/a Hector
Santillan,

      Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,[*]

      Respondent.

No. 20-9584
(Petition for Review)

_____

**ORDER AND JUDGMENT[**]**
_____

Before **HARTZ**, **BRISCOE**, and **BACHARACH**, Circuit Judges.
_____

Hector Santillan-Borrayo (Petitioner), a native and citizen of Mexico, petitions

for review of a Board of Immigration Appeals (BIA) decision affirming the denial of

_____

[*] On March 11, 2021, Merrick B. Garland became Attorney General of the
United States. Consequently, his name has been substituted for William P. Barr as
Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

his application for cancellation of removal under 8 U.S.C. § 1229b(b)(1). We dismiss his petition in part and deny it in part.

## BACKGROUND

In 2017 the government issued Petitioner a notice to appear in removal proceedings, charging that he was present in the country without having been lawfully admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). He conceded the charge and applied for cancellation of removal—a form of discretionary relief that requires an alien to show, among other things, that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen [or lawful permanent resident] of the United States." *Id.* § 1229b(b)(1)(D).

Petitioner, his wife, and their two-year-old daughter, Naomi, unlawfully entered the United States in 2002. While in the United States, Petitioner and his wife had three more children—J.S., born in 2003; H.S., born in 2005; and M.S., born in 2009. At a hearing before an immigration judge (IJ), Petitioner, his wife, and Naomi testified. Petitioner and his wife testified that she would be unable to earn enough money to support the children on her own and that the family would therefore join him if he was removed to Mexico. Petitioner contended that consequently his removal would result in hardship to his family, especially his three citizen children.

The IJ acknowledged that Petitioner offered evidence that the family's relocation would cause "significant economic loss" and "loss of educational opportunities" for the younger children; and he noted the family's "concern[s] about

2

the violence and dangers in Mexico." R. vol. 1 at 95. Regarding the economic consequences of removal, Petitioner and his wife testified that they did not have any savings, and their extended family in Mexico would be unable to assist because of their own limited resources. Petitioner's wife believed the family "would only have enough [money] to eat and to pay for [their] rent." *Id.* at 140. She predicted she would make less than $80 every two weeks working part-time in a factory in Mexico. Petitioner testified he would seek employment in construction or a factory but did not know how much he would earn. He further stated that his son J.S., then 15 years old, would need to find a job and that the other children would not be able to attend school because of the high cost of public education in Mexico.

Petitioner also presented evidence of family medical problems. His wife testified, with supporting documentation, that she suffers from diabetes. She opined that she would not be able to afford the necessary medication in Mexico, which could pose a risk of serious illness or death. Naomi testified that after Petitioner was taken into custody, M.S., then nine years old, lost interest in school, began experiencing stomach pains, and would cry. There was also testimony that J.S. had been diagnosed with anxiety and depression, for which he was receiving therapy and taking medication. Petitioner offered a one-page letter from J.S.'s therapist, which indicated he had "been diagnosed with Adjustment Disorder with Mixed Disturbance of Conduct and Emotion" following "an abrupt change in mood and conduct (which appear[ed] to be related to his father's legal concerns and potential deportation)." *Id.* at 238.

3

The IJ denied Petitioner's cancellation application, concluding that Petitioner failed to establish the requisite hardship to the only relatives of his whose hardship could be taken into account—the three citizen children. The IJ noted the children would suffer economic hardship and a loss of educational opportunities if they moved to Mexico. But he concluded there was not "sufficient persuasive evidence" "to find that there would not be enough funds for the family to live in Mexico" and to take care of their "medical needs." *Id.* at 96. Regarding the health of Petitioner's wife, the IJ found the "evidence [was] not specific and reliable enough . . . to make a finding that there would be inadequate care for [her] diabetes in Mexico." *Id.* And although the IJ recognized that J.S. had suffered from mental-health issues since the initiation of the removal proceedings, he found that the documentary evidence did not establish that J.S.'s mental-health condition "would necessarily present a significant issue once the removal proceedings are completed and the family's transition from living in the United States to Mexico is completed." *Id.* at 97. The IJ further noted that the therapist's letter did not substantiate the testimony that J.S. had been diagnosed with depression. He concluded that the citizen children "would certainly suffer hardship" but not "substantially beyond the ordinary hardship that would be expected when a close family member leaves the United States." *Id.*

Petitioner appealed to the BIA, which acknowledged that his "income would be reduced" and that, as a result, his "children would have a lower standard of living in Mexico" and "would experience loss of educational opportunities" as well as "emotional[] and economic hardship." *Id.* at 4. The BIA also recognized that his

"15-year-old son was diagnosed with Adjustment Disorder with Mixed Disturbance of Conduct and Emotion," for which he had been "taking medication" and "receiving mental health counseling." *Id.* But the BIA found that the IJ "reasonably concluded that such hardship does not rise to the requisite level." *Id.* The BIA further stated that the IJ "reasonably considered that [Petitioner] did not present specific or detailed evidence of physical or mental health issues specific to his qualifying relatives that would compellingly affect the consideration of hardship." *Id.* at 5. After a "careful review of the record, including the information related to the economic, medical, and emotional difficulties and concerns in the record," the BIA concluded that Petitioner had not established "exceptional and extremely unusual hardship." *Id.* It dismissed the appeal, and Petitioner petitioned this court for review.

## DISCUSSION

Petitioner contends the BIA erred in upholding the denial of his cancellation application on the ground that he failed to establish the requisite level of hardship to his qualifying relatives. Under § 1252(a)(2)(B)(i), we lack jurisdiction to review "the discretionary aspects of a decision concerning cancellation of removal," including "whether the petitioner's removal . . . would result in exceptional and extremely unusual hardship to a qualifying relative under . . . § 1229b(b)(1)(D)." *Galeano-Romero v. Barr*, 968 F.3d 1176, 1181 (10th Cir. 2020) (internal quotation marks omitted). We retain jurisdiction under § 1252(a)(2)(D), however, "to review constitutional claims and questions of law, including those that arise in the circumstances specified at § 1229b(b)(1)." *Id.* at 1182 (internal quotation marks

5

omitted). For a constitutional claim to be reviewable, it must be "colorable," *id.* at 1184 (internal quotation marks omitted); it cannot be either "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial or frivolous," *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001) (internal quotation marks omitted). For a question of law to be reviewable, it must raise "a statutory-construction argument" or contest "the application of a legal standard to undisputed or established facts." *Galeano-Romero*, 968 F.3d at 1182 (internal quotation marks omitted). We review constitutional claims and questions of law de novo. *See Mena-Flores v. Holder*, 776 F.3d 1152, 1162 (10th Cir. 2015).

Petitioner first contends the BIA applied an incorrect legal standard and imposed extra-statutory criteria for hardship. He asserts that although "the cancellation statute does not condition eligibility on the number of children," the BIA "found [him] statutorily ineligible because only one of his three citizen children has a disability." Pet'r's Opening Br. at 9. We have jurisdiction to consider this argument. *See Galeano-Romero*, 968 F.3d at 1184 (claims that the BIA unreasonably interpreted the statutory hardship requirement or deviated from its own hardship standard constitute reviewable questions of law). But Petitioner's argument lacks merit. He relies on a Third Circuit opinion, which reversed and remanded a BIA decision because it appeared that the BIA may have misinterpreted the language of § 1229b(b)(1)(D) by attaching weight to the number of qualifying relatives in its hardship determination. *See Pareja v. Att'y Gen.*, 615 F.3d 180, 188 (3d Cir. 2010).

6

The BIA's decision in Petitioner's case, however, cannot be fairly read as imposing an artificial rule requiring hardship to more than one child. Rather, it clearly considered the aggregate hardship to all of Petitioner's citizen children and found that it did not suffice to merit relief.[1]

Petitioner next appears to contend the BIA failed to adequately assess the individual hardship faced by J.S. *See* Pet'r's Opening Br. at 21 (contending "the IJ lumped [J.S.'s] disability with the other children who have no health or educational issues to conclude that the family would not suffer the type of 'hardship'" required). But Petitioner did not ask the BIA to consider J.S.'s hardship in isolation. And in any event, the BIA properly considered the evidence of hardship cumulatively. *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63–64 (B.I.A. 2001) (noting "all hardship factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship"). To the extent Petitioner contends the BIA should have afforded more weight to the hardship faced by J.S., we lack jurisdiction over such an argument. *See Galeano-Romero*, 968 F.3d at 1182-85.[2]

---

[1] Because the BIA did not impose extra-statutory criteria in concluding Petitioner failed to establish the requisite level of hardship, we need not address his argument that a decision by the BIA to apply such criteria would not be entitled to deference under either *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[2] Petitioner also suggests the BIA insufficiently discussed J.S.'s mental health. But "the BIA is not required to discuss every piece of evidence." *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995).

Finally, Petitioner contends he was denied due process because the BIA did not explicitly address his request to revisit its precedents concerning the hardship standard and reconcile that precedent with its unpublished cases. But this argument is not a reviewable question of law because it neither "advance[s] a statutory construction argument" nor "disput[es] the application of a legal standard to undisputed or established facts." *Id.* at 1182. And the argument is not a colorable constitutional claim because it amounts only to "a quarrel about the level of detail required in the BIA's analysis." *Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009). The BIA stated that it considered both the unpublished authority and Petitioner's "arguments in this regard" and concluded that he had not shown the requisite hardship. R. vol. 1 at 5. That was sufficient. *See Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) (noting "[t]he BIA is not required to write an exegesis on every contention" (internal quotation marks omitted)). Accordingly, we lack jurisdiction over Petitioner's final argument.[3]

## CONCLUSION

The petition for review is dismissed in part and denied in part.

Entered for the Court

Harris L Hartz
Circuit Judge

---

[3] We note that Petitioner's counsel raised these identical arguments in prior cases, and this court held they were not colorable constitutional claims. *See Ortega-Lopez v. Barr*, 836 F. App'x 654, 656-57 (10th Cir. 2020); *Saldivar Colon v. Barr*, 805 F. App'x 595, 600-01 (10th Cir. 2020).