**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RAFAEL MONTEJANO-MARTINEZ,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 23-9556
(Petition for Review)

_____

### ORDER AND JUDGMENT*

_____

Before **MATHESON**, **BALDOCK**, and **McHUGH**, Circuit Judges.

_____

An immigration judge (IJ) denied Mr. Montejano's application for cancellation

of removal and ordered him removed to Mexico.  Mr. Montejano appealed the IJ's

decision to the Board of Immigration Appeals (BIA).  The BIA dismissed his appeal

from the denial of cancellation but remanded to the IJ to determine Mr. Montejano's

---

\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

eligibility for voluntary departure.[1]  He now petitions for review of the BIA's denial

of his application for cancellation of removal.  We deny the petition for review.

## BACKGROUND

### 1.  Evidence Mr. Montejano presented to the agency

Mr. Montejano is a native and citizen of Mexico who was born in 1973.  At the

hearing on his application, he testified he came to the United States as a young child.

He then left this country when he was ten years old and lived in Mexico until he

returned to the United States in 2004.  At the time of the hearing, he was 45 years

old.

In 2018 the Department of Homeland Security served him with a Notice to

Appear (NTA) alleging he had entered the United States without being admitted or

paroled after inspection.  Mr. Montejano admitted the allegations in the NTA and

conceded his removability, but he sought cancellation of removal.

To be eligible for a discretionary grant of cancellation of removal,

Mr. Montejano had to establish four elements: (1) physical presence in the United

States for a continuous period of not less than ten years; (2) good moral character

during that time; (3) no convictions for certain enumerated offenses; and (4) "that

removal would result in exceptional and extremely unusual hardship to the alien's

---

[1] Notwithstanding the remand for further proceedings on the voluntary departure issue, the BIA's order is a final order of removal subject to our review under 8 U.S.C. § 1252.  *See Batubara v. Holder*, 733 F.3d 1040, 1042-43 (10th Cir. 2013) (ongoing proceedings concerning voluntary departure do not affect the finality of a removal order because voluntary departure affects only the manner of the non-citizen's exit from this country, not the issue of removal itself).

spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(A)-(D). The government stipulated that he met the physical presence requirement, had not been convicted of a disqualifying offense, and had three qualifying relatives: his 13-year-old son, his lawful permanent resident (LPR) mother, and his citizen father. The remaining issues to be resolved were whether he had the requisite good moral character and whether his removal would result in exceptional and extremely unusual hardship to any or all of his qualifying relatives. Only if these requirements were met would the IJ need to consider whether he warranted a favorable exercise of discretion.

At the hearing Mr. Montejano testified about his criminal history. Other than relatively minor offenses, he had been convicted of a Utah Class B misdemeanor conviction for driving under the influence (DUI). He explained the circumstances that led to the DUI offense, his compliance with the conditions of his sentence, and the lessons he had learned from his conviction and sentence.

Mr. Montejano also testified about his family members and the hardship they would face if he were removed to Mexico. His son, G.M., thirteen, was a United States citizen born in this country. If Mr. Montejano were removed, G.M. would not go with him to Mexico. This would cause G.M. hardship, because he and Mr. Montejano were close, and Mr. Montejano tried to spend as much time as he could with G.M. They did things together, like going to movies.

Mr. Montejano testified that G.M. did not have any medical conditions. His wife, who was not a qualifying relative, also had no medical issues and was

3

employed.  But Mr. Montejano stated he did not think she would be able to pay the family's bills if he were removed.

Mr. Montejano also discussed hardship to his LPR mother.  He stated she had serious medical issues, requiring doctor's appointments, but he was not sure exactly what those issues were.  If Mr. Montejano were removed, she would not go with him to Mexico because she needed to go to doctor's appointments in the United States.

Finally, Mr. Montejano discussed hardship to his United States citizen father. His father had diabetes (for which he had been hospitalized), and liver and kidney problems.  Mr. Montejano provided his father with between $100 and $200 every month to help him financially because his father was not working.  His father would not join him in Mexico because he needed to receive treatment in the United States. He would suffer financially and emotionally if Mr. Montejano were removed to Mexico.

Mr. Montejano's father also testified at the hearing.  He stated he was 64 years old, had diabetes and kidney problems, and could not work but received social security benefits.  He was seeing a kidney specialist and had spent time in the hospital three years earlier for intestinal problems.  He had medical insurance and lived in his own home with his wife and daughter.  His daughter helped him financially and his wife received retirement pay from Dillard's.  He also received financial help from his two other sons, who live in Utah.  Consistent with his son's testimony, he stated that if Mr. Montejano were removed to Mexico, he would not go

with him because he receives medical treatment in the United States. He estimated Mr. Montejano provided him with support of between $100 and $400 per month.

In addition to this testimonial evidence, Mr. Montejano also supplied documentary evidence in support of his claim. This included background information about his application along with his father's medical records, Mr. Montejano's employment records (including W-2 and tax forms), and information about his criminal history.

### 2. The IJ's decision

Although he cited Mr. Montejano's "impressive work history," his "outstanding parenting," and his "strong family ties in the United States," R. at 57, the IJ concluded he had failed to meet his burden of establishing good moral character. The IJ cited the "aggravating" circumstances of Mr. Montejano's DUI conviction, including his high blood alcohol content and his erratic driving when he was stopped by the Utah Highway Patrol. *Id.* at 58.

The IJ also concluded Mr. Montejano had failed to establish exceptional and unusual hardship to his qualifying relatives. Based on the hearing testimony, the IJ analyzed the effect on those relatives if Mr. Montejano was the only person in his extended family who relocated to Mexico. The IJ acknowledged "[t]hat scenario would certainly create hardship for all three permanent residents." *Id.* at 59. And although "all three qualifying relatives would suffer emotional and financial hardship," Mr. Montejano had not shown "that the hardship that they would suffer

would be substantially beyond the ordinary hardship that would be expected when a close family member leaves the United States." *Id.* at 61.

Although G.M. would no longer be living with both parents if Mr. Montejano were removed to Mexico, G.M. had no medical issues, was doing well in school, was living with his mother, and would have the emotional and financial support of other family members who lived nearby. Mr. Montejano's parents lived in their own home with an adult daughter and received support from all five of their adult children living in Utah. If Mr. Montejano were removed to Mexico, their other children could continue to provide them with support and could perhaps increase their contribution to compensate for the loss of his financial support. In addition, both parents had retirement income and Mr. Montejano's father had government-sponsored health insurance to help with his medical bills. The IJ specifically considered the parents' health, noting there was no evidence their healthcare treatment would be discontinued if Mr. Montejano were removed.

### 3. The BIA's decision

Mr. Montejano appealed to the BIA, which adopted and affirmed the IJ's decision denying cancellation of removal. The BIA specifically mentioned and affirmed both the IJ's good moral character and hardship determinations. But it remanded for further proceedings before the IJ on the voluntary departure issue.

## DISCUSSION

### 1. Standard of Review

This case involves a single BIA member's brief order under 8 C.F.R. § 1003.1(e)(5).[2]  We review that order as the final agency determination, "limit[ing] our review to issues specifically addressed therein."  *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006).  When the BIA adopts the IJ's rationale by reference, as it did here, "[w]e may consult the IJ's decision to give substance to the BIA's reasoning."  *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009).  "We review the BIA's legal determinations *de novo*, and its findings of fact for substantial evidence."  *Aguayo v. Garland*, 78 F.4th 1210, 1216 (10th Cir. 2023).

### 2. Exceptional and Extremely Unusual Hardship

While this appeal was pending, the Supreme Court abrogated our decision in *Galeano-Romero v. Barr*, 968 F.3d 1176, 1182-84 (10th Cir. 2020), and determined that the BIA's application of the "exceptional and extremely unusual hardship" standard under § 1229b(b)(1)(D) to a given set of facts is a question of law subject to judicial review.  *Wilkinson v. Garland*, 144 S. Ct. 780, 787-88 & n.2 (2024).  The Court emphasized, however, that "[b]ecause this mixed question is primarily factual, that review is deferential."  *Id.* at 792-93; *see also Martinez v. Garland*, ___F.4th___, No. 23-9593, 2024 WL 1626336, at *2 (10th Cir. Apr. 16, 2024) (stating that under

---

[2] The BIA's decision was issued by a Temporary Appellate Immigration Judge appointed by the Attorney General.  *See generally* 8 C.F.R. § 1003.1(a)(1), (4).

*Wilkinson*, "we apply a deferential standard to review the BIA's hardship determination").

Mr. Montejano primarily argues the BIA departed from its precedent by failing to account for the totality of the circumstances and the cumulative effect on his qualifying relatives if he is removed to Mexico. The BIA's precedent requires that "all hardship factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 64 (BIA 2001). The ultimate issue is whether the applicant has demonstrated that his qualifying relatives would suffer hardship that is substantially beyond that which would ordinarily be expected to result from the person's departure. *Id.* at 59.

As Mr. Montejano implicitly acknowledges, *see* Pet'r. Opening Br. at 13, the BIA referred to (and adopted) the IJ's consideration of hardship factors in their totality. *See* R. at 6 (BIA's decision twice stating that "the [IJ] properly considered the numerous hardship factors in their totality, but determined that they did not rise to the requisite level of hardship"); *see also* 61 (IJ's decision concluding, after analyzing the financial, emotional, and medical hardship to all three qualifying relatives, that "all three qualifying relatives would suffer emotional and financial hardship" but that Mr. Montejano had not established "the hardship that they would suffer would be substantially beyond the ordinary hardship that would be expected when a close family member leaves the United States"). Mr. Montejano reiterates some of the hardships his qualifying relatives may face as the result of his removal,

8

*see* Pet'r Opening Br. at 11-12, but fails to show that the BIA ignored or failed to discuss the aggregate impact of these harms when making its hardship determination.

Mr. Montejano further argues the BIA's decision is inconsistent with a case it cited, *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002) (en banc).[3]  The facts and circumstances of *Recinas* differ significantly from those of this case.  In *Recinas*, the respondent was the single mother of six children, four of whom were United States citizens ranging in age from 5 to 12 years old.  She depended on her mother to watch the children while she worked, and there was no indication the children's father remained actively involved in their lives.  The children would return to Mexico with their mother if she were removed but they had never even traveled there and had difficulty speaking Spanish.  Under these circumstances, the BIA found the case presented a close question, and fell "on the outer limit of the narrow spectrum of cases in which the exceptional and extremely unusual hardship standard will be met." *Id.* at 470.  The BIA nevertheless found the hardship to be exceptional and extremely unusual, given the cumulative hardship factors, which included "the heavy financial and familial burden on the adult respondent, the lack of support from the children's father, the United States citizen children's unfamiliarity with the Spanish language, the lawful residence in this country of all of the respondent's immediate family, and

---

[3] Mr. Montejano also contends the BIA's decision is inconsistent with two other cases it cited.  But he does not develop a specific argument concerning any inconsistency with those cases.  We have examined the cases he cites and find no inconsistency with the BIA's decision.  Given the lack of a developed argument on this point, however, we decline to discuss these cases in detail.

the concomitant lack of family in Mexico." *Id.* at 472. Mr. Montejano's case does not present such an extraordinary, cumulative burden of unalleviated hardship factors, and the IJ and BIA's hardship analysis in his case was not impermissibly inconsistent with *Recinas*'s cumulative approach.

In sum, Mr. Montejano has not established that, contrary to its own caselaw, the BIA failed to assess the aggregate impact of hardship to all of his qualifying relatives. Nor has he shown, under our deferential standard of review, that the BIA erred in determining that he failed to show the required level of hardship. We therefore deny the petition for review on the hardship issue.

### 3. Good Moral Character

As stated earlier, Mr. Montejano had to establish all four criteria in § 1229b(b)(1)(A)-(D) to be eligible for cancellation of removal. Thus, his failure to establish any one element would preclude his eligibility for relief. Because we have upheld the BIA's unfavorable hardship determination, we need not further consider the issues he raises concerning its independent ground for denial, the BIA's determination that he lacked good moral character.

### CONCLUSION

The petition for review is denied.

Entered for the Court

Bobby R. Baldock
Circuit Judge

10